UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------------x

FERNANDO HERNANDEZ, JUANY GUZMAN, BRANDON
ROSE, IRVING COLLADO, ANDRES SALAS, BENGALY
KONATE, MICHAEL J. RODRIGUEZ, WILTON A. DARDAINE
and JUAN CORREA,

                    *Plaintiffs*,

        -against-


THE FRESH DIET INC.,
LATE NIGHT EXPRESS COURIER SERVICES, INC. (FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
INNOVATIVE FOOD HOLDINGS, INC. (FL)
FRESH DIET EXPRESS CORP. (FL),
NEW FRESH CO., LLC (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and SCHER ZALMAN DUCHMAN, Individually,

                    *Defendants*.

-----------------------------------------------------------------------------------x

**15 Civ. 1338**

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
INNOVATIVE FOOD HOLDINGS, INC.'S MOTION TO DISMISS THE THIRD
AMENDED COMPLAINT**

---

Walker G. Harman, Jr., Esq. [WH-8044]
THE HARMAN FIRM, LLP
*Attorneys for Plaintiffs*
220 Fifth Avenue, Suite 900
New York, New York 10001
(212) 425-2600
wharman@theharmanfirm.com

INTRODUCTION ...................................................................................................... 1

FACTS ...................................................................................................................... 2

LEGAL ANAYLSIS ................................................................................................. 4

    Motion to Dismiss Standards ............................................................................. 4

    Successor Liability ............................................................................................. 5

        Substantial Continuity .................................................................................. 6

    Piercing The Corporate Veil .............................................................................. 7

        Choice of Law ............................................................................................... 8

        Florida Piercing Standard ............................................................................. 8

    Continuing Liability ........................................................................................... 9

    Amending the Complaint .................................................................................... 10

<u>CASES</u>                                                                                                                      <u>PAGES</u>

*Battino v Cornelia Fifth Ave.,* LLC, 861 F. Supp. 2d 392 (S.D.N.Y. May 24, 2012) ................5, 6

*Bautista v Beyond Thai Kitchen, Inc.,* 2015 U.S. Dist. LEXIS 124454 (S.D.N.Y. Sep. 17, 2015).................................................................................................................. ................5, 6, 7

*Duling v Gristedes Operating Corp., 265 F.R.D. 91 (S.D.N.Y. Jan. 8 2010)* ................................5

*Fletcher v Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ...................................................................7

*Flores v Velocity Express, LLC,* 2015 U.S. Dist. LEXIS 50367, (N.D. Cal. Apr. 16, 2015).........6

*Irizarry v Catsimatidis, 722 F.3d 99 (2d Cir. 2013)*........................................................................4

*Jai Fu Chen v New 9th Ave Pearl on the Sushi Inc.,* 2015 U.S. Dist. LEXIS 84128, (S.D.N.Y. June 29, 2015)................................................................................................................ 6

*Meterlogic, Inc. v Copier Solutions, Inc.,* 126 F. Supp. 2d 1346 (S.D. Fla. 2000) ........................8

*Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002).......................................................................4

*Sykes v. James*, *Chime v Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183 (E.D.N.Y. 2015) ...................5

*Tara Prods. v Hollywood Gadgets, Inc.*, 2010 U.S. Dist. LEXIS 37889 (S.D. Fla., Apr. 16, 2010) ...............................................................................................................................8

*Tho Dinh Tran v Dinh Truong Tran*, 1998 U.S. Dist. LEXIS 414, at *7, *10 (S.D.N.Y. Jan. 20, 1998)................................................................................................................................9

*United States v KForce Gov't Solutions, Inc.*, 2014 U.S. Dist. LEXIS 158626 (M.D. Fla., Nov. 10, 2014) ..........................................................................................................................8, 9

Plaintiffs Fernando Hernandez, Juany Guzman, Brandon Rose, Irving Collado, Andres Salas, Bengaly Konate, Michael J. Rodriguez, Wilton A. Dardaine, and Juan Correa, by counsel, The Harman Firm, LLP, submit this Memorandum of Law in Opposition to Defendant Innovative Food Holdings, Inc.'s Motion to Dismiss the Third Amended Complaint (TAC).

## INTRODUCTION

Defendant Innovative Food Holdings, Inc. ("Innovative" or "Defendant" has moved this Court to dismiss Plaintiffs' Third Amended Complaint[1] against them.  In order to convince the Court that they should not be a party to this lawsuit, Innovative has misconstrued or misrepresented the salient facts and law.  Innovative is deeply involved in this litigation, it is liable for the actions of The Fresh Diet, Inc. ("Fresh Diet") and the other Defendants, and as such, is a proper party to this action.  At the time this action was filed, Innovative wholly controlled the operations of Fresh Diet and were responsible for all decisions related to Fresh Diet's liabilities, including those liabilities that arose prior to Innovative's purchase and control of Fresh Diet.

In the alternative, should the Court be inclined to grant Innovative's motion, the Court should instead allow Plaintiffs to amend the complaint to include, *inter alia*, i) new facts concerning Innovative's precipitation of New Fresh Co., LLC's ("New Fresh") bankruptcy, ii) new facts concerning Innovative's control over all financial decisions of Fresh Diet, including the satisfaction of pre-existing liabilities, and iii) newly discovered statements, prompted by the

---

[1] Innovative suggests that the fact that Plaintiffs have previously amended their complaint amounts to a failure by Plaintiffs to properly plead this action; such an implication is unfounded. Plaintiff first amended to include an additional Plaintiff (Juan Correa); Plaintiffs then amended to include additional information concerning joint employer liability between Fresh Diet and Late Night Express Courier Services, Inc.; Plaintiff then amended a third time to include information about Innovative.  Innovative's Appendix detailing the multiple versions of the Complaint only shows that the underlying illegal actions have remained the same.

above-referenced bankruptcy, made by Defendants, describing the total control of Innovative over Fresh Diet's operations.

The nature of Innovative's relationship with the other Defendants in this action is highly relevant: it gives rise to Innovative's liability.  Naturally, Plaintiffs have limited insight into Innovative's corporate machinations; while the TAC does contain several specific allegations about Innovative's relationship with Fresh Diet and other Defendants, the relevant new information was only uncovered subsequent to the filing of the TAC.

In short, Innovative assumed Fresh Diet's legal liability when it acquired Fresh Diet; it then made that liability its own when it became so deeply involved in Fresh Diet's operations as to render them functionally one and the same, and then disposed of Fresh Diet in such a way as to make prosecution of this case against Fresh Diet functionally impossible.  Accordingly, the Court should deny Innovative's motion and keep them in this case.

## FACTS

For a more complete statement of facts in this case, Plaintiffs respectfully direct the Court to the TAC.  Declaration of Walker G. Harman, Jr., dated August 4, 2016 ("Harman Decl.") Ex. A ("TAC").  A summary of the facts relevant to the instant motion are as follows:

Plaintiff were employed by Defendants (excluding Innovative) at various times within the relevant statutory period up through 2013 as delivery drivers.  TAC ¶¶ 33, 43, 44, 48.  Plaintiffs bring this action alleging that they were i) improperly classified as independent contractors and thereby denied minimum wage and overtime under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and ii) retaliated against for participating in a separate action against Defendant Fresh Diet, (*Hernandez et al. v. The Fresh Diet Inc. et al*, 12-cv-04339 (ALC)(JLC)(S.D.N.Y.) hereafter referred to as "*Hernandez I*").  TAC  ¶¶ 1, 2.  Many of the

Plaintiffs opted in to Hernandez I, then commenced the instant action when that case was decertified. Harman Decl. ¶ 3.

Innovative acquired Fresh Diet on August 15, 2014, subsequent to the commencement of Hernandez I. TA3 ¶ 83. As a result of that merger, Innovative became the sole shareholder of Fresh Diet. TAC ¶ 84. Fresh Diet's operations were controlled and directed by Innovative. TAC ¶¶ 84, 86; Harman Decl. Ex. B, C. This control included personnel decisions, decisions about the scope of the business, and decisions concerning litigation strategy in Hernandez I. TAC ¶ 84, Harman Decl. Ex. C. Plaintiffs recently learned, through papers filed by Innovative in Fernandez I, that Fresh Diet was insolvent throughout Innovative's period of control, and was sustained only through funds received from Innovative.[2] Harman Decl. Ex. C.

Plaintiff filed the initial complaint in this action on February 24, 2015, filed the First Amended Complaint on April 10, 2015, filed the Second Amended Complaint on September 25, 2015, and filed the Third Amended Complaint on May 31, 2016. Harman Decl. ¶¶ 3-5. Innovative was named in each.

In February 2016, Innovative arranged for and executed the sale a controlling interest in Fresh Diet to New Fresh; New Fresh is owned by Defendant Duchman, who had sold his stake in Fresh Diet to Innovative less than two (2) years prior. TAC ¶¶ 87-89. Innovative orchestrated this transaction in an attempt to avoid liability in *Hernandez I* and to shield any remaining assets from the settlement of *Hernandez I*. TAC ¶ 90.

---

[2] Plaintiffs are aware that the Court cannot consider matters outside of the pleadings; to the extent that Plaintiffs provide information outside of the pleadings in this Opposition, it serves only to illustrate the extent to which Plaintiffs' recently obtained information that potentially necessitates the filing of an amended complaint.

Plaintiffs do not suggest that Fresh Diet took illegal actions towards them while owned

by Innovative; Innovative's ownership, as they note, did not commence until after the last

Plaintiff had ceased working for Fresh Diet. Plaintiffs do assert that Innovative has assumed

liability for Fresh Diet's prior acts due to the extent of Innovative's control over Fresh Diet, and

Innovative's bad faith efforts to divest itself of Fresh Diet. Given that Innovative was

responsible for Fresh's liabilities at the time this action was filed, Innovative is a proper

Defendant and a necessary party to this action.

### LEGAL ANAYLSIS

Innovative argues that the Complaint should be dismissed because Plaintiffs fail to allege

any wrongdoing against Plaintiffs by Innovative. And while it is true that the acts giving rise to

liability under the FLSA and NYLL took place prior to Innovative's involvement, Innovative is

still subject to Fresh Diet's liability through the doctrines of piercing the corporate veil and

successor liability in the context of the FLSA.

The Court may note that, under the FLSA, courts do not use traditional analysis when

determining if an individual owner is liable under the statute as an employer. *See Irizarry v*

*Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013). ("[T]he purpose of the FLSA is not to punish an

employer but to remunerate aggrieved employees.") It stands to reason, then, that this Court can

use the FLSA's "economic realities" test in lieu of state law veil-piercing standards when

determining whether liability extends to a subsequent purchaser; the same justification for a

more lenient standard applies in this situation: remuneration of aggrieved employees.

**Motion to Dismiss Standards**

A complaint is sufficient, and should not be dismissed, if it complies with Rule 8(a)(2),

which requires "a short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a)(2).  A complaint satisfies the requirements of Rule 8(a) if it gives

respondent "fair notice of the basis for petitioner's claims." *Swierkiewicz v. Sorema N. A.*, 534

U.S. 506, 514 (2002).  When deciding a motion to dismiss, [t]he court must . . . accept the

complaint's allegations as true, and draw all reasonable inferences in the plaintiff's favor.  *Sykes*

*v. James*, *Chime v Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 190 (E.D.N.Y. 2015).  The

adequacy of Plaintiffs' FLSA pleadings against all non-Innovative Defendants is addressed more

thoroughly in Plaintiffs' response to their Motion to Dismiss; this Opposition assumes that

Plaintiffs have stated a claim against Fresh Diet and addresses in detail the adequacy of Plaintiffs

claims against Innovative.  Thus, taking Plaintiffs' allegations as true, the Court must find that

Plaintiffs have alleged grounds for Innovative to be liable for Fresh Diet's prior actions. [3]

### Successor Liability

As a matter of law, FLSA liability can pass from the initial wrongdoer to a purchasing

entity through successor liability.  *See Bautista v Beyond Thai Kitchen, Inc.,* 2015 U.S. Dist.

LEXIS 124454, at *6 (S.D.N.Y. Sep. 17, 2015); *Battino v Cornelia Fifth Ave., LLC*, 861 F. Supp.

2d 392, 400 (S.D.N.Y. 2012).  The concept is that one entity may not escape liability simply by

transforming into another and continuing as functionally the same business.  Thus, at a bare

minimum, the Fresh Diet entity controlled by Innovative, through successor liability, bears the

liabilities of the original Fresh Diet.

However, other circuits have recognized that successor liability in the FLSA context does

not apply only where the wrongdoer entity sells its assets and ceases to exist, but also in the

---

[3] In the alternative, Plaintiffs seek leave to file a Fourth Amended Complaint, pursuant to Rule
15.  Leave to amend a pleading should be freely granted when justice so requires.  *Duling v
Gristedes Operating Corp*., 265 F.R.D. 91, 96 (S.D.N.Y.)  Allowing Plaintiffs to amend would
not prejudice Defendants.

parent-subsidiary context. "'[T]he form of transfer from one business to another [is] of no consequence in the successorship inquiry.' That is because the relevant question in determining whether to extend successor liability is whether 'the policies underlying the FLSA' are 'better served,' and 'the relevant policy analysis [is] unaffected by the type of transfer.' *Flores v Velocity Express, LLC*, 2015 U.S. Dist. LEXIS 50367, at *11 (N.D. Cal. Apr. 16, 2015, No. 12-cv-05790-JST), *citing Steinbach v. Hubbard*, 51 F.3d 843, 847 (9th Cir. 1995). Courts in this Circuit frequently cite to *Steinbach* for the proposition that courts should use the more lenient "substantial continuity" test (described below); this Court should refer to *Steinbach* for the above proposition as well. *Battino v Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d at 402, *Bautista v Beyond Thai Kitchen, Inc.,* 2015 U.S. Dist. LEXIS 124454, at *7. Using this construction of successor liability, Innovative would assume Fresh Diet's FLSA liabilities to former employees.

<u>Substantial Continuity</u>

The Second Circuit has not conclusively determined what the proper test for succesor liability should be in the FLSA context. *Jai Fu Chen v New 9th Ave Pearl on the Sushi Inc.*, 2015 U.S. Dist. LEXIS 84128, at *12-13 (S.D.N.Y. June 29, 2015). Nonetheless, multiple decisions in the Southern District of New York have held that the "substantial continuity" test is appropriate in the FLSA context (*Id, Battino v Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d at 402, *Bautista v Beyond Thai Kitchen, Inc.,* 2015 U**.**S**.** Dist**.** LEXIS 124454, at *10). When assessing the adequacy of Plaintiffs' Complaint, the Court should look to the substantial continuity test to determine if successor liability has been adequately pled.

When determining whether a purchaser has substantial continuity with the purchasing company, courts typically look to the following elements:

(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Bautista v Beyond Thai Kitchen, Inc.,* 2015 U**.**S**.** Dist**.** LEXIS 124454, at *10. Again, this case is only at the motion to dismiss stage; Plaintiffs' allegations regarding the continued operation of Fresh Diet and Innovative must be taken as true. Plaintiffs' Third Amended Complaint contains facts that address the majority of the factors above: Plaintiffs allege that Innovative had notice of Hernandez I at the time of acquisition (and therefore knew of the outstanding liability at issue here); Plaintiffs also allege that Fresh Diet, in all of its manifestations, used substantially the same employees, equipment and methods, performed the same operations, services and product. TAC ¶ 91, 94-97. These allegations establish substantial continuity; thus, Plaintiffs adequately pled successor liability.

**Piercing The Corporate Veil**

As a matter of law, a parent corporation is subject to the liabilities of a subsidiary if the two are so intertwined that the corporate veil can be pierced. Plaintiffs' Third Amended Complaint contains allegations that suffice to establish grounds for piercing the corporate veil, and therefore, liability for Innovative on Fresh Diet's actions.

As noted above, courts do not use the traditional employment analysis when determining if an individual owner is liable under the FLSA as an employer. *Irizarry v Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013). ("[T]he purpose of the FLSA is not to punish an employer but to remunerate aggrieved employees."). The reasoning applies as well to *all* analyses of which

entities are liable under FLSA is at issue, including the piercing of the corporate veil.  As a

result, the Court need not engage in the traditional veil-piercing analysis.  However, as shown

below, even under the applicable veil-piercing standards, liability attaches to Innovative.

## *Choice of Law*

Under New York choice of law principles, the law of the state of incorporation is used

when determining whether to pierce the corporate veil.  *Fletcher v Atex, Inc.*, 68 F.3d 1451,

1456-1457 (2d Cir. 1995).  Here, Innovative is incorporated in Florida (TAC ¶ 23), therefore

Florida law applies to this question.

## *Florida Piercing Standard*

Under Florida law, "[a]t the motion to dismiss stage, courts are reluctant to determine the

fact intensive question of whether a corporate entity is merely an alter ego to protect an

individual defendant from liability."  *Tara Prods. v Hollywood Gadgets, Inc.*, 2010 U.S. Dist.

LEXIS 37889, at *35 (S.D. Fla., Apr. 16, 2010).  Further, in Florida, "a court will pierce the

corporate veil when a corporation does not have funds to satisfy a judgment, so that corporations

may not hide assets by simply passing them to other individuals or entities."  *United States v*

*KForce Gov't Solutions, Inc.*, 2014 U.S. Dist. LEXIS 158626, at *27 (M.D. Fla., Nov. 10, 2014).

Plaintiffs have alleged that Innovative improperly manipulated Fresh Diet to avoid the

obligations of the settlement agreement negotiated by Innovative's attorneys in Hernandez I

(TAC ¶ 90); this type of conduct not only permits the piercing of the corporate veil in that case,

but also amounts to improper conduct sufficient to support Plaintiffs' argument in favor of

piercing the corporate veil in this case.

Under Florida law, in order to pierce the corporate veil, Plaintiffs must "(1) that the

subsidiary is a mere instrumentality of the parent and (2) improper conduct." *Meterlogic, Inc. v Copier Solutions, Inc.*, 126 F Supp 2d 1346, 1357 (S.D. Fla. 2000). Plaintiffs have adequately pled the first element by alleging that Innovative "controlled all aspects of The Fresh Diet, including, but not limited to, its operations, the hiring and firing of employees, the payment of wages, and legal issues," (TAC ¶ 86), and by alleging that Fresh Diet was undercapitalized to the extent that it was unable to fund the settlement agreement in Hernandez I (TAC ¶ 93).

As described above, Plaintiffs adequately pled the second element by alleging that Innovative used various corporate transactions with Fresh Diet to avoid judgment. This is certainly improper conduct. Accordingly, with all plausible inferences afforded to the Plaintiffs, they have, at the very least, adequately pled a scenario that warrants the piercing of the corporate veil.

**Continuing Liability**

As shown above, Innovative must be held liable for Fresh Diet's actions; Innovative assumed Fresh Diet's liability through its acquisition and control of Fresh Diet. Plaintiff commenced this action while Innovative owned Fresh Diet. Since that time, and likely in response to the ongoing litigation, Innovative attempted to shield itself from liability by dumping Fresh Diet back onto its original owner. Shortly thereafter, New Fresh declared bankruptcy. Harman Decl. ¶ 9, Ex. B. As mentioned above, one reason that courts entertain liability for parent corporations is so they may not hide assets. *United States v KForce Gov't Solutions, Inc.*, 2014 U.S. Dist. LEXIS 158626, at *27 (M.D. Fla., Nov. 10, 2014). Innovative was a proper party at the outset of this litigation, and remains a proper party today. *Id.* Innovative's attempts to stymie the Plaintiffs in this case by any means necessary run contrary to the intent of the FLSA: "the purpose of the FLSA is not to punish an employer but to remunerate aggrieved

9

employees." Accordingly, the Court should deny Innovative's motion to dismiss.

### Amending the Complaint

Should the Court question the adequacy of the TAC, then, as respectfully requested above, it should deny Innovative's motion, and permit Plaintiffs to amend their complaint. Subsequent to the filing of Plaintiffs' Third Amended Complaint, the parties engaged in motion practice over the settlement agreement in Hernandez I and New Fresh declared bankruptcy. Both these events led to significant disclosures about Innovative's role in the operations and decision making of Fresh Diet, including the fact that Innovative was funding Fresh Diet, that Fresh Diet was insolvent throughout Innovative's ownership, and allegations by other defendants that Innovative's actions caused New Fresh's bankruptcy. Motions to amend under Rule 15(a) are to be freely granted, and often are when relevant new information comes to light. *Tho Dinh Tran v Dinh Truong Tran*, 1998 U.S. Dist. LEXIS 414, at \*7, \*10 (S.D.N.Y. Jan. 20, 1998). This new information is extremely relevant to Plaintiffs' arguments against Innovative's motion to dismiss; accordingly, on this basis, the Court should permit Plaintiffs to file a Fourth Amended Complaint.

### CONCLUSION

In summation, Plaintiffs have adequately pled claims against Defendant Innovative, due to Innovative's assumption of liability. If the Court has any doubt as to the adequacy of Plaintiffs' claims, it should allow Plaintiffs to file an amended complaint.