UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                :
FERNANDO HERNANDEZ, JUANY    :
GUZMAN, BRANDON ROSE, IRVING : Case No.: 15-CV-1338 (ALC)
COLLADO, ANDRES SALAS, BENGALY:
KONATE, MICHAEL J. RODEIGUEZ, :
WILTON A. DARDAINE, and JUAN    :
CORREA,                                     :
                                                :
                Plaintiffs,                   :
                                                :
        -- against --                      :
                                                :
THE FRESH DIET, INC., LATE NIGHT :
EXPRESS COURIER SERVICES, INC. :
(FL), FRESH DIET EXPRESS CORP.    :
(NY), THE FRESH DIET – NY INC. (NY), :
FRESH DIET GRAB & GO, INC. (FL) :
a/k/a YS CATERING HOLDINGS, INC. :
(FL) d/b/a YS CATERING, INC. (FL),  :
INNOVATIVE FOOD HOLDINGS, INC. :
(FL), FRESH DIET EXPRESS CORP. (FL),:
SYED HUSSAIN, Individually, JUDAH :
SCHLOSS, Individually, and ZALMI :
DUCHMAN, Individually,              :
                                                :
                Defendants.               :
-------------------------------------------------------x

# DEFENDANT INNOVATIVE FOOD HOLDINGS, INC.'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO
# DISMISS THE THIRD AMENDED COMPLAINT

FEDER KASZOVITZ LLP
845 Third Avenue
New York, New York 10022
Telephone: (212) 888-8200

Attorneys for Defendant
Innovative Food Holdings, Inc.

<u>Of Counsel:</u>
Howard I. Rhine
David Sack

Defendant Innovative Food Holdings, Inc. ("Innovative"), respectfully replies to Plaintiffs' memorandum in opposition to its motion to dismiss the Third Amended Complaint ("TAC") (the "Opp. Br.").

## POINT I
## THIS ACTION SHOULD BE DISMISSED AS AGAINST INNOVATIVE

Plaintiffs concede, as they must, that their "group pleading" allegations of wrongdoing with respect to the three claims for relief set forth in the TAC do not apply to Innovative since Innovative could never have had any employer relationship with Plaintiffs. (Opp. Br. at 4) ("Plaintiffs do not suggest that Fresh Diet took illegal actions towards them while owned by Innovative"). Similarly, Plaintiffs implicitly concede that Innovative cannot be liable as a joint employer, or under the joint enterprise theory pleaded as a group pleading in the TAC. (*Id.*) Instead, Plaintiffs, without authority, announce a new rule of law, *viz.*, "It stands to reason, then, that this Court can use the FLSA's "economic realities" test in lieu of state law veil-piercing standards when determining whether liability extends to a subsequent purchaser."[1] (*Id.*) Plaintiffs then assert that Innovative is liable for Fresh Diet's alleged misconduct under the successor liability theory, or under a veil piercing theory. (Opp. Br. at 5-6, 7-8) Neither of these theories support liability as against Innovative.

---

[1] In another jaw-dropping statement, issued *ex cathedra* and without citation to authority, Plaintiffs declare that "Given that Innovative was responsible for Fresh's liabilities at the time this action was filed, Innovative is a proper Defendant and a necessary party to this action." (Opp. Br. at 4) Taken to its logical conclusion, this would make Innovative liable for all of The Fresh Diet , Inc.'s ("Fresh Diet") liabilities from August 2014 to the present! Not only is this statement unsupported by any legal authority, either for the proposition that Innovative was legally responsible for the liabilities of Fresh Diet while it owned the company – such a proposition would turn centuries of established corporate law on its head – or for the proposition that Innovative is a necessary party, but such a conclusion is not supported by any allegation contained in the TAC, or for that matter, the proposed new allegations Plaintiffs wish to insert into a *fourth* amended complaint; their *fifth* attempt to plead a claim.

### A. Innovative Is Not Liable Under The Theory Of Successor Liability

Plaintiffs' theory of successor liability is that "one entity may not escape liability simply by transforming into another and continuing functionally as the same business." (Opp. Br. at 5) This statement also succinctly expresses why Innovative cannot be liable under the successor liability theory: Fresh Diet never transformed itself into another entity, nor attempted to circumvent any liability. It simply changed shareholders.

The only nexus Plaintiffs allege between Innovative and their claims is that Innovative became a corporate parent after the fact, and therefore the owner of Fresh Diet from August 2014 through February 2015. (TAC ¶¶ 83, 89) The law is clear, however, that an owner who did not have "operational control" over the company, and "personal responsibility for making decisions about the conduct of the business that contributed to the violations of the [FLSA]" at the time of the violations themselves, cannot have any FLSA liability on the basis of such ownership. *See Irizarry. v. Catsimatidis*, 722 F.3d 99, 108 (2d Cir. 2013). *See also*, *Bautista v. Beyond Thai Kitchen, Inc.*, 2015 WL 5459737 at *5 (S.D.N.Y. Sep. 17, 2015) (cited by Plaintiffs at Opp. Br. at 5) (declining to impose liability on an "owner" who incorporated, but does not control or operate, the continuing business).

Plaintiffs' claim, then, is that solely by purchasing Fresh Diet's stock from its previous owners, Innovative became liable for Fresh Diet's alleged prior violations of statute (and all of its prior liabilities). (Opp. Br. at 5) Innovative, however, cannot have successor liability because Innovative was not a successor of Fresh Diet. Again, it was merely a shareholder. At all times prior to Innovative's acquiring of the Fresh Diet shares, and subsequent to its divestiture of those

shares, Fresh Diet was its own entity, carrying on its own business. (TAC ¶¶ 94-97)[2] Plaintiffs cite no authority for the proposition that where a corporate business continues to operate, each of its succeeding shareholders may be liable for its pre-existing obligations. Indeed, such a rule is contrary to one of the foundational principles of corporate law – a corporate shareholder is not liable for the corporation's obligations. Even under the FLSA, there is no shareholder liability for any entity which, like Innovative, was not an owner at the time of the alleged wrongdoing.

Successor liability does not attach where there is no successor, and also requires a showing either that the purchaser expressly assumed the liabilities of the seller; or there was a consolidation or merger; or the purchasing corporation was a mere continuation of the seller; or the transaction was entered into fraudulently. *New York v. National Service Industries, Inc.*, 460 F.3d 201, 209 (2d Cir. 2006).

Here, in addition to the fact that there was no successor to Fresh Diet's business, which Fresh Diet never stopped operating, none of the other criteria apply. Plaintiffs concede that Fresh Diet continued to exist as a surviving and operating entity. (TAC ¶¶ 83, 89)[3]

Thus, Fresh Diet, not its shareholder Innovative, continued to operate its business, and Fresh Diet's assets and liabilities remained with Fresh Diet and were not passed to Innovative.

---

[2] According to published news reports, Fresh Diet ceased business operations in July 2016. (*See* Ex. A to the accompanying Declaration of David Sack, executed August 24, 2016 (the "Sack Decl.")) It is undisputed that this occurred months after Innovative sold 90% of its interest in Fresh Diet and years after the alleged violations. (TAC ¶ 89)

[3] *See also* Innovative's Form 10-Q for the period ending September 30, 2015 at pp. 19, 26 (a true and correct copy of Innovative's public filing with the SEC is attached as Ex. B to the accompanying Sack Decl.) ("The company also recorded the issuance of an additional 3,110,063 shares of common stock with a fair value of $1.40 per share to shareholders of The Fresh Diet who have not yet submitted their shares of The Fresh Diet to the company." . . . "On August 15, 2014, pursuant to a merger agreement, the Company acquired The Fresh Diet, Inc. ("FD") through a reverse triangular merger as the registrant created a subsidiary corporation that merged with and into FD with FD being the surviving corporation and becoming a wholly-owned subsidiary of the Company").

3

In fact, the only thing that changed as a result of the transaction is that Fresh Diet's previous owners no longer owned the stock of the company. (TAC ¶¶ 83, 89)

Plaintiffs argue, in the alternative, that the "substantial continuity" test, articulated by the Supreme Court in the collective bargaining context, *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225 (1987), applies in this case to impute liability to Innovative as the purchaser of Fresh Diet's stock. (Opp. Br. at 5, citing *Battino v. Cornella Fifth Avenue, LLC*, 861 F. Supp.2d 392 (S.D.N.Y. 2012)). However, *Battino* and the authority cited therein, including *Fall River* and *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2005 WL 22833 at *79 (S.D.N.Y. Jan. 5, 2005), apply only to situations where one company acquires the *assets*, but not the *stock* of a business, and using those assets, it continue to operate the same business. That is not the case here, where the transaction by which Innovative acquired Fresh Diet was a stock purchase; the business owner changed, but the business continued to operate as before – there was no successor. Thus, unlike an asset purchase, in which a different business enterprise may take over the existing business, our case involves a stock acquisition, or reverse triangular merger, where the seller's business continues intact, albeit with different ownership. 2005 WL 22833 at *79. According to the express language in *Rowe*, this removes the instant case from the "substantial continuity" test applicable to an asset purchase agreement. *Id.*

Therefore, because Innovative's acquisition of Fresh Diet was, in essence, a stock purchase transaction effected through the mechanism of a reverse triangular merger, and not an asset purchase, and because Fresh Diet continued to operate its own business both when it was owned by Innovative, and subsequent to its sale to New Fresh Co., LLC ("New Fresh") (TAC ¶¶ 94-97), the substantial continuity test for successor liability is inapplicable, and there is no basis

for Innovative to be liable for the claims asserted herein that occurred prior to its acquisition of Fresh Diet, and certainly subsequent to its sale of Fresh Diet.

Similarly, *Bautista v. Beyond Thai Kitchen, Inc.*, 2015 WL 5459737 at *5 (S.D.N.Y. Sep. 17, 2015), relied on by Plaintiffs does not support successor liability, because unlike the defendant in *Bautista*, Innovative no longer owns or operates Fresh Diet. The Court in *Bautista* did not impose liability on the restaurant's previous owners, 2015 WL 5459739 at *5, and Plaintiffs cite no authority that would permit the Court to impose liability on Innovative here, where Innovative sold 90% of its interest to New Fresh more than six months ago.

The very authority upon which **Plaintiffs** rely, provides that the only parties that could be liable for the claims asserted in the Complaint are Fresh Diet, as the alleged employer, or New Fresh, as the current owner of Fresh Diet.[4] Accordingly, the claims against Innovative should be dismissed.

### B. There Is No Liability Under The Veil Piercing Theory

The TAC woefully fails to allege a basis for liability on the part of Innovative. Even applying Florida law, as Plaintiffs seek to do, Florida law is crystal clear that in order to pierce the corporate veil, not only must plaintiff allege and prove that the corporation is dominated and controlled by its owner so as to support that it is an alter ego, but also that the corporation was used to mislead its creditors or perpetuate a fraud against them. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1119 (Fla. 1984).[5]

---

[4] In theory, the shareholders of Fresh Diet at the time of the alleged statutory violations could be held liable as well under *Battino*. Innovative takes no position as to whether such liability exists, but notes that there are no factual allegations in the TAC that would support such liability under the joint employer theory.

[5] "It isn't sufficient merely to show that the corporation exists and that there are a limited number of stockholders doing business in good faith through the corporate entity. . . . The corporate veil will not be penetrated either at law or equity unless it is shown that the corporation

5

Plaintiffs do not allege that Innovative used Fresh Diet's corporate form to perpetrate a fraud on them, nor can they, since the alleged wrongs of Fresh Diet occurred well prior to Innovative's acquisition of its stock. There could therefore have been no reliance, by Plaintiffs or anyone else, on any alleged abuse of the corporate form by Innovative to defraud them as alleged employees of Fresh Diet.

Moreover, the financial relationship between Innovative and Fresh Diet was always a matter of public record, and reflected in Innovative's public filings with the SEC, including the massive cash loans advanced by Innovative to Fresh Diet and the fact that such loans were keeping Fresh Diet afloat. *See* Sack Decl., Ex. B at p. 30 (disclosing the loans made by Innovative to Fresh Diet and the expenses of Fresh Diet paid by Innovative, all totaling in excess of $7 million). Innovative's financial relationship with Fresh Diet was thus at all times well-known, publicly disclosed, and could not possibly have been used to mislead or defraud creditors, including Plaintiffs (who are not creditors of Innovative, and have never entered into any transaction with the company).[6]

---

was organized or employed to mislead creditors or to work a fraud upon them." 450 So.2d at 1120. "The rule is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them . . . In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate, [plaintiff] cannot be heard to question the corporate existence but must confine efforts to the remedies provided by law for satisfying his judgment *from the assets of the corporation*, if any can be found (Citations omitted, emphasis in the original)." 450 So.2d at 1119-20, citing *Riley v. Fatt*, 47 So.2d 769 (Fla. 1950).

[6] The same result is reached under New York law. *Battino*, 861 F. Supp.2d at 409-410. ("New York establishes two requirements for piercing the corporate veil . . . (1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil"). *Hangzhou Kailai Neckwear Apparel Co. v. NCP Direct Sourcing, Inc.*, 15 cv 1441, NYLJ 1202765621495 at *6-*7 (S.D.N.Y. Aug. 17, 2016) (complaint dismissed without leave to amend when it failed to allege that the individual defendants conducted their

6

Despite having failed to allege any basis upon which to pierce Fresh Diet's corporate veil against a former shareholder which had no relationship with Fresh Diet at the time of the alleged wrongdoing, Plaintiffs argue that Innovative "used various corporate transactions with Fresh Diet to avoid judgment." (Opp. Br. at 9) Setting aside that Plaintiffs do not plead any facts supporting this conclusory statement, these allegations are not plausible on their face, and do not withstand scrutiny under *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007). First, as set forth above, all of Innovative's transactions with Fresh Diet were publicly disclosed and not hidden. Plaintiffs cannot allege ignorance of the financial relationship between the companies either when they commenced this lawsuit, or when they amended the Complaint for the *fourth* time on May 31, 2016.

Second, Plaintiffs' theory that the sale of Fresh Diet to New Fresh was to avoid judgment does not withstand scrutiny. There was no judgment at the time of the sale, and there is no judgment today. Plaintiffs cite no authority for the proposition that a disclosed transaction while a lawsuit is pending gives rise to a claim for piercing the corporate veil, much less that the seller can be held liable for the alleged underlying conduct that occurred prior to its acquisition of the company. There is simply no basis to impute underlying FLSA and New York Labor Law liability to Innovative, which became an owner only after the primary violations were long past, and which subsequently sold its shares in the business.

Third, that Innovative was supporting Fresh Diet financially gives rise neither to a presumption that the corporate veil ought to be pierced, or that as a result, Innovative is forever

---

business in disregard of corporate formalities, and failed to state factual allegations to demonstrate that the corporate form was abused to defraud a corporate creditor). No fraud or wrong is alleged in the TAC, nor can any such conduct be alleged for the reasons set forth above.

7

liable for future liabilities that Fresh Diet may incur. To the contrary, Innovative's financial support of Fresh Diet could only have benefitted Fresh Diet's creditors. Plaintiffs' argument thus flies in the face of logic, as well as the established Florida and New York requirements for piercing the corporate veil.

Because Plaintiffs have not pled, and cannot plead facts that give rise to liability on the part of Innovative under the continuing liability theory, and because Plaintiffs have not pled, and as a matter of law cannot plead facts that would support piercing the corporate veil to impute Fresh Diet's liabilities to Innovative, the TAC must be dismissed in its entirety as against Innovative.

## II. LEAVE TO AMEND THE COMPLAINT YET AGAIN SHOULD BE DENIED

Perhaps realizing that collecting from a company that is now out of business may prove difficult, Plaintiffs are desperately attempting to find any hook to latch onto Innovative, as a perceived "deep pocket" which, regardless of actual liability or allegations of wrongdoing, can fund Plaintiffs' frivolous claims. In doing so, Plaintiffs have made their multiple Complaints into a moving target, continually throwing unfounded allegations at Innovative in the hope that something will stick.

Innovative having demonstrated that it cannot be liable for the alleged statutory violations as an employer, joint employer, or participant in a joint enterprise, Plaintiffs now desperately attempt to allege facts which could somehow constitute "wrongdoing" sufficient to impose liability. No facts pleaded in the TAC support such liability, and none of the "new" facts Plaintiffs claim to have discovered (Opp. Br. at 10) can support liability either.

Plaintiffs' request to amend hinges on their purported ability to plead alleged recently discovered facts establishing that: (1) Innovative was funding Fresh Diet; (2) Fresh Diet was

8

insolvent throughout Innovative's ownership; and (3) purported statements attributed in the press to counsel for New Fresh that Innovative's actions caused New Fresh's bankruptcy. (Opp. Br. at 10) None of these "facts" are "new" or "recently discovered," or are valid points of reference, and none save the Complaint from dismissal.

That Innovative was lending money Fresh Diet and that but for such loans Fresh Diet would have been insolvent is plain from Innovative's public filings with the SEC which Plaintiffs, as a matter of law, were on notice of prior to filing the TAC. (*See, e.g.,* Sack Decl., Ex. B.) Plaintiffs cannot say they "discovered" these facts based on Innovative's communications with this Court, when these facts were in the public domain at least seven months prior to the filing of the TAC.

Defendants' supposedly "new" allegations that Innovative "caused" New Fresh's bankruptcy[7] are also not new and equally unsupportable, being alleged in ¶ 90 of the TAC. The only "new fact" that Plaintiffs are presumably referring to is a statement attributed to Mr. Duchman's new "general counsel," Daniel Gielchinsky, as paraphrased (not quoted) in an article in the *Miami Herald* on July 25, 2016. (*See* Sack Decl., Ex. A.) Aside from the fact that the report of Mr. Gielchinsky's purported statement is not a direct quote, constitutes the reporter's understanding, and also may be his view that cannot be based on any first-hand knowledge of the facts, it adds nothing new to Plaintiffs' extant allegations at ¶ 90 of the TAC. Thus, if the Court dismisses the TAC, as it should, the Court should also deny Plaintiffs leave to file their proposed

---

[7] New Fresh has not declared bankruptcy. It has assigned its assets for the benefit of its creditors. This procedure differs from bankruptcy in several significant ways, not the least of which is that there is no stay of litigation, so that this lawsuit can continue against Fresh Diet and New Fresh without regard to the assignment. Moreover, the assignment does not and cannot discharge debt, so in the unlikely event that a judgment is obtained against Fresh Diet or New Fresh, the judgment would not be wiped out as a matter of law.

9

Fourth Amended Complaint. Because Plaintiffs have not identified any new facts they can allege to cure the deficiencies of the TAC, filing yet another amendment will be futile.

Finally, should the Court in its discretion decide that amendment at this point is not futile, Innovative respectfully requests that Plaintiffs be ordered to pay the costs and attorneys' fees associated with this motion, and all prior procedural steps Innovative was required to undertake with respect to the previous iterations of the Complaint, as a prerequisite to any such amendment. The prejudice to Innovative caused by the multiple iterations of Plaintiffs' complaints, and the need for Innovative's responses caused Innovative to expend time, effort, and resources – including attorneys' fees – to respond to ultimately frivolous and withdrawn claims, only for Plaintiffs to ask for yet another chance – a *fifth* chance – to amend their Complaint. Plaintiffs were admonished by Magistrate Judge Cott to complete a thorough investigation of their claims when he permitted them one last opportunity to amend, and to file the TAC. That the TAC is now purportedly incomplete, and that Innovative had to spend multiple thousands of dollars dealing with pleadings that were ultimately withdrawn or superseded, permits the Court, as a pre-condition to allow any further amendment, to impose reasonable costs upon Plaintiffs.

## Conclusion

For the reasons stated herein, Innovative respectfully requests that the Court grant its motion in full, dismiss this action as against it in its entirety and with prejudice and without leave to amend, grant Innovative its costs associated with defending this frivolous pleading, including reasonable attorneys' fees, and grant Innovative such other and further relief as it deems just and proper.

Dated: New York, New York
       August 24, 2016

                      Respectfully submitted,

                      FEDER KASZOVITZ LLP

By: _____
      Howard I. Rhine (HR-1961)
      David Sack (DS-6532)
845 Third Avenue
New York, New York 10022
Telephone: (212) 888-8200

Attorneys for Defendant
Innovative Food Holdings, Inc.