UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------x

FERNANDO HERNANDEZ, JUANY GUZMAN, BRANDON
ROSE, IRVING COLLADO, ANDRES SALAS, BENGALY
KONATE, MICHAEL J. RODRIGUEZ, WILTON A. DARDAINE
and JUAN CORREA,

                              *Plaintiffs*,

          -against-

THE FRESH DIET INC.,
LATE NIGHT EXPRESS COURIER SERVICES, INC. (FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
INNOVATIVE FOOD HOLDINGS, INC. (FL)
FRESH DIET EXPRESS CORP. (FL),
NEW FRESH CO., LLC (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and SCHER ZALMAN DUCHMAN, Individually,

                              *Defendants*.
-----------------------------------------------------------------------------------x

**15 Civ. 1338**

**FOURTH AMENDED
COMPLAINT**

       Plaintiffs Fernando Hernandez, Juany Guzman, Brandon Rose, Irving Collado, Andres Salas, Bengaly Konate, Michael J. Rodriguez, Wilton A. Dardaine, and Juan Correa, by counsel, The Harman Firm, LLP, allege for their Fourth Amended Complaint against Defendants The Fresh Diet Inc., Late Night Express Courier Services, Inc. (FL), Fresh Diet Express Corp. (NY), The Fresh Diet Grab & Go, Inc. (FL) a/k/a YS Catering Holdings, Inc. (FL) d/b/a YS Catering, Inc. (FL), Innovative Food Holdings, Inc. (FL), Fresh Diet Express Corp. (FL), New Fresh Co., LLC (FL), Syed Hussain, Judah Schloss, and Scher Zalman Duchman (collectively "Defendants"), as follows:

**NATURE OF ACTION**

1.      Plaintiffs Brandon Rose, Irving Collado, Andres Salas, Bengaly Konate, Michael J. Rodriguez, Wilton A. Dardaine, and Juan Correa (collectively "Wage and Hour Plaintiffs") are entitled to: (i) unpaid wages from Defendants for overtime work for which they did not receive over-time premium pay; and (ii) to liquidated damages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 – 219, and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 – 665.

2.      Defendants also retaliated against Plaintiffs Fernando Hernandez, Juany Guzman, and Juan Correa (collectively "Retaliation Plaintiffs") by discharging them for filing and/or participating in an action against Defendants alleging violations of the FLSA and NYLL (*Hernandez v. The Fresh Diet Inc.*, 12 Civ. 04339 (S.D.N.Y. June 1, 2012 (henceforth referred to as "Hernandez I")), pursuant to and FLSA § 215 and NYLL § 215.

**JURISDICTION AND VENUE**

3.      Pursuant to 29 U.S.C. § 1331, jurisdiction over Plaintiffs' claims is conferred on this Court as Defendants violated Plaintiffs' rights under the FLSA, 29 U.S.C. §§ 201 – 219.

4.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' claims brought under New York State law, as these claims are so related to those claims in the action within such original jurisdiction that they form part of the same case or controversy.

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to the claims occurred within this District.

**JURY DEMAND**

6. Plaintiffs respectfully request a trial before a jury.

**PARTIES**

7. Plaintiff Fernando Hernandez was, at all relevant times, an adult individual, residing in the State of New York.

8. Plaintiff Juany Guzman was, at all relevant times, an adult individual, residing in the State of New York.

9. Plaintiff Brandon Rose was, at all relevant times, an adult individual, residing in the State of New York.

10. Plaintiff Irving Collado was, at all relevant times, an adult individual, residing in the State of New York.

11. Plaintiff Andrew Salas was, at all relevant times, an adult individual, residing in the State of New York.

12. Plaintiff Bengaly Konate was, at all relevant times, an adult individual, residing in the State of New York.

13. Plaintiff Michael J. Rodriguez was, at all relevant times, an adult individual, residing in the State of New York.

14. Plaintiff Wilton A. Dardaine was, at all relevant times, an adult individual, residing in the State of New York.

15. Plaintiff Juan Correa was, at all relevant times, an adult individual, residing in the State of New York.

16. Upon information and belief, Defendant The Fresh Diet, Inc. ("The Fresh Diet"),

at all times hereinafter mentioned, was and remains a Florida corporation with its current principal office located at 11900 Biscayne Blvd., Suite 630, North Miami, Florida 33181.  Upon information and belief, The Fresh Diet's former principal office was located at 9429 Harding Avenue, Suite 34, Surfside, Florida 33154.

17.     Upon information and belief, Defendant Late Night Courier Express Services, Inc. ("Late Night"), at all relevant times, was a Florida corporation with offices at 9429 Harding Avenue, No. 34, Surfside, Florida, 33154.  Upon information and belief, Late Night, a Defendant herein, is a former business partner of Defendant The Fresh Diet.

18.     Upon information and belief, Defendant Fresh Diet Express Corp. ("The Fresh Diet Express"), at all relevant times, was a Florida corporation doing business in the State of New York with a facility located at 192 Seigel Street, Brooklyn, New York, 11206.  Upon information and belief, Fresh Diet Express, a Defendant herein, is a former business partner of Defendant The Fresh Diet.

19.     Upon information and belief, Defendant The Fresh Diet – NY, Inc. ("Fresh Diet NY"), at all relevant times, was a New York corporation with offices at 332 Albany Avenue, 2nd Floor, Brooklyn, New York, 11213.  Upon information and belief, Fresh Diet NY, a Defendant herein, is a former business partner of Defendant The Fresh Diet.

20.     Upon information and belief, Defendant Fresh Diet Grab & Go, Inc. ("Grab and Go"), at all relevant times, was a Florida corporation with offices at 1813 NE 123 ST, North Miami, Florida, 33161.  Upon information and belief, Grab and Go, a Defendant herein, is a former business partner of Defendant The Fresh Diet.

21.     Upon information and belief, Defendant YS Catering Holdings Inc. ("YS Holdings"), at all relevant times, was a Florida corporation with offices located at 9429 Harding

4

Avenue, Suite 34, Surfside, Florida 33154.  Upon information and belief, YS Holdings, a Defendant herein, is a former business partner of Defendant The Fresh Diet.

22. Upon information and belief, Defendant YS Catering Inc. ("YS"), a Defendant herein, at all relevant times, was a Florida corporation with offices located 9429 Harding Avenue, Suite 34, Surfside, Florida 33154.  Upon information and belief, YS, a Defendant herein, is a former business partner of Defendant The Fresh Diet.

23. Upon information and belief, at all relevant times, Defendant Syed Hussain ("Hussain"), was the New York Regional Delivery Manager of Late Night and The Fresh Diet, and was and is at all relevant times, the Plaintiffs' direct supervisor.  Defendant Hussain's home address is presently unknown to Plaintiffs but as The Fresh Diet's New York Regional Delivery Manager, his business address is the same as The Fresh Diet's New York regional food preparation and distribution facility: 192 Siegel Street, Brooklyn, New York.

24. Upon information and belief, Defendant Hussain acted intentionally and maliciously, and is an "employer" pursuant to the FLSA, 20 U.S.C. § 203(d) and regulations promulgated thereunder, including 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is thus jointly and severally liable with the other Defendants.

25. Upon information and belief, Defendant Judah Schlass ("Schlass") is the chief operating officer ("COO") of The Fresh Diet.  Defendant Schlass' home address is presently unknown to Plaintiffs but as Chief Operating Officer of The Fresh Diet, his business address is the same as Defendant The Fresh Diet's corporate headquarters:  11900 Biscayne Blvd., Suite 630, North Miami, Florida 33181 (formerly 9429 Harding Avenue, No. 34, Surfside, Florida, 33154).

26. Upon information and belief, Defendant Schloss acted intentionally and

maliciously, and is an "employer" pursuant to the FLSA, 20 U.S.C. § 203(d) and regulations promulgated thereunder, including 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is thus jointly and severally liable with the other Defendants.

27.     Upon information and belief, Defendant Scher Zalman Duchman, a.k.a., Zalmi Duchman, ("Duchman") was The Fresh Diet's Chief Executive Officer ("CEO") and Late Night's President.  Duchman's home address is presently unknown to Plaintiffs but as CEO of The Fresh Diet his business address is the same as Defendant The Fresh Diet's corporate headquarters: 11900 Biscayne Blvd., Suite 630, North Miami, Florida 33181 (formerly 9429 Harding Avenue, No. 34, Surfside, Florida, 33154).

28.     Upon information and belief, Duchman acted intentionally and maliciously, and is an "employer" pursuant to the FLSA, 20 U.S.C. § 203(d) and regulations promulgated thereunder, including 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is thus jointly and severally liable with the other Defendants.

29.     All corporate and individual Defendants separately defined in paragraphs 16 through 28 are hereinafter collectively referred to as the "Fresh Diet Defendants."

30.     Upon information and belief, Innovative Food Holdings, Inc. ("Innovative"), at all times hereinafter mentioned, was and remains a Florida corporation with offices located at 26411 Race Track Road, Bonita Springs, Florida 34135.  Upon information and belief, Innovative purchased The Fresh Diet in and around August 2014.

31.     Upon information and belief, New Fresh Co., LLC. ("New Fresh"), at all times hereinafter mentioned, was and remains a Florida corporation with offices located at 9455 Collins Avenue #605 Surfside, Florida 33154.  Upon information and belief, New Fresh purchased The Fresh Diet in and around March 2016.

32. Upon information and belief, the Fresh Diet Defendants, were part of a single business enterprise and are owned, controlled, and/or managed by the same core group of individuals.

33. Upon information and belief, upon Innovative's purchase of The Fresh Diet, Innovative incorporated The Fresh Diet into its infrastructure such that, for all intents and purposes, The Fresh Diet was a department within Innovative.

## FACTUAL ALLEGATIONS

### Wage and Hour Claims

34. Plaintiffs were employed by Defendants as food delivery employees covering customer delivery routes in the tri-state New York metropolitan area, beginning in or about winter 2007.

35. Plaintiff Hernandez was employed by Defendants from May 7, 2010, to July 5, 2012, and worked approximately seven hundred and ninety-one (791) days for Defendants. During this time, Hernandez worked in excess of forty (40) hours each week.

36. Plaintiff Guzman was employed by Defendants from January 29, 2012, to June 28, 2012, and worked approximately one hundred and fifty-two (152) days for Defendants. During this time, Guzman worked in excess of forty (40) hours each week.

37. Plaintiff Rose was employed by Defendants from July 23, 2010, to July 28, 2011, and worked approximately one hundred and sixty-five (165) days for Defendants. During this time, Rose worked in excess of forty (40) hours each week.

38. Plaintiff Collado was employed by Defendants from December 24, 2010, to July 6, 2011, and worked approximately one hundred and sixty (160) days for

Defendants.  During this time, Collado worked in excess of forty (40) hours each week.

39. Plaintiff Salas was employed by Defendants from April 2, 2010, to March 16, 2011, and worked approximately four hundred and seventy (470) days for Defendants.  During this time, Salas worked in excess of forty (40) hours each week.  In fact, he believes that he worked in excess of sixty (60) hours each week he worked for Defendants.

40. Plaintiff Konate was employed by Defendants from July 9, 2010, to August 4, 2010, and worked approximately two hundred and fifty-one (251) days for Defendants.  During this time, Konate worked in excess of forty (40) hours each week.

41. Plaintiff Rodriguez was employed by Defendants from June 18, 2010, to July 21, 2010, and worked approximately thirty-three (33) days for Defendants.  During this time, Rodriguez worked in excess of forty (40) hours each week.

42. Plaintiff Dardaine was employed by Defendants from approximately early 2011 to early 2013 and worked approximately five hundred and two (502) days for Defendants.  During this time, Dardaine worked in excess of forty (40) hours each week.

43. Plaintiff Correa was employed by Defendants from January 4, 2011, to March 14, 2013, and worked approximately five hundred and forty-two (542) days for Defendants.  During this time, Correa worked in excess of forty (40) hours each week.

44. Fresh Diet's website, www.thefreshdiet.com, on its "How It Works" page, describes Defendants' daily food delivery service as follows:

> <u>Our diet meal delivery plans are delivered to your doorstep five days a week</u> in a thermally insulated cooler bag to ensure that your food maintains freshness and taste. The Fresh Premium, Fresh Classic and Fresh Vegetarian diet meal plans offer seven days of the freshest produce, meats and breads hand delivered to your door five days a week. (emphasis added)

45. Plaintiffs' work was performed in the normal course of Defendant Fresh Diet's business and was integrated into the Fresh Diet Defendants' business.

46. Plaintiffs often worked in excess of forty (40) hours a week, yet the Fresh Diet Defendants willfully failed to pay them overtime compensation of one and one-half (1.5) times their regular hourly rate, in violation of the FLSA and the NYLL and pertinent regulations promulgated thereunder.

47. The Fresh Diet Defendants knew that the nonpayment of overtime would economically damage Plaintiffs and violate the FLSA and the NYLL and regulations promulgated thereunder.

48. Defendant The Fresh Diet, through Defendant Hussain, was responsible for establishing, altering, and terminating Plaintiffs' delivery routes and schedules in the New York City tri-state metropolitan area.

49. Defendant The Fresh Diet, through Defendant Hussain, was directly responsible for reprimanding and/or otherwise disciplining or punishing the Plaintiffs whenever he became or becomes dissatisfied with any aspect of their performance.

50. Throughout all relevant time periods, upon information and belief, the Fresh Diet Defendants failed to post and to keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA.

51. During the course of Plaintiffs' employment with the Fresh Diet Defendants, the Fresh Diet Defendants failed to maintain accurate and sufficient time records.

### Retaliation Claims

52. On June 1, 2012, Plaintiffs Hernandez and Guzman filed Hernandez I against the Fresh Diet Defendants for unpaid overtime.

53. On or about June 26, 2012, the Fresh Diet Defendants terminated Plaintiff Hernandez's employment.

54. On or about June 28, 2012, the Fresh Diet Defendants terminated Plaintiff Guzman's employment.

55. The Fresh Diet Defendants terminated Plaintiffs Hernandez and Guzman because they filed Hernandez I complaining about Defendants' FLSA and NYLL violations.

56. In and around March 2013, Plaintiff Correa discussed with the Fresh Diet Defendants' employees his intention of joining the Hernandez I.

57. Plaintiff Correa opted-in to the Hernandez I on March 15, 2013. *See* Docket No. 91.

58. On March 15, 2013, that very same day, Plaintiff Correa was terminated by Defendants.

59. Upon his termination, Defendants' employee, known only as "Cesar" to Plaintiff Correa, told Plaintiff Correa that "[Plaintiff Correa] was a traitor because he was in the lawsuit" and "[o]ver [his] dead body [Plaintiff Correa] wasn't going to get nothing [sic]."

60. The Fresh Diet Defendants willfully violated Plaintiffs Hernandez's, Guzman's, and Correa's rights by discharging them for filing and/or participating in an action against the Fresh Diet Defendants alleging violations of the FLSA and NYLL.

61. Retaliation against employees for filing and/or participating in an action alleging a FLSA and NYLL violation violates respectively the FLSA and NYLL.

**Defendants Late Night and The Fresh Diet Were Joint Employers of Plaintiffs**

62. At all relevant times, upon information and belief, Defendants Late Night and The Fresh Diet were business partners.

63. Upon information and belief, Duchman is the CEO at The Fresh Diet, the CEO at YS, and the President of Late Night.

64. Upon information and belief, Duchman personally created Late Night for the sole purpose of using it as a channel for hiring and compensating Plaintiffs.

65. Upon information and belief, at all relevant times, Duchman was the sole owner of Late Night.

66. Upon information and belief, at all relevant times, The Fresh Diet was Late Night's only client.  Late Night worked exclusively with Fresh Diet.

67. Upon information and belief, Late Night was The Fresh Diet's only distributor.

68. Upon information and belief, Late Night had no function other than to serve as the delivery arm of Fresh Diet.

69. Upon information and belief, The Fresh Diet paid Late Night based on Late Night's operations.

70. The Fresh Diet managed Late Night's business operations.  For example, if a customer had a problem or complaint with a driver, he or she would contact The Fresh Diet.

71. The Fresh Diet provided daily-prepared meals, which Plaintiffs delivered directly to Fresh Diet's customers.

72. The Fresh Diet instructed Late Night and Plaintiffs as to how to handle the meals, including how Plaintiffs were to deliver them.

73. Defendant Hussain, the New York Regional Delivery Manager of Late Night and The Fresh Diet, managed the Plaintiffs from The Fresh Diet's regional "kitchen" or food preparation and distribution facility on Siegel Street in Brooklyn, New York ("The Fresh Diet's facility").

74. Additionally, Hussain often managed The Fresh Diet's facility.

75. Hussain often acted on behalf of The Fresh Diet.  For example, in a letter dated February 11, 2011, Hussain signed a letter on The Fresh Diet's letterhead, in which he identified himself and Plaintiff Collado as The Fresh Diet's employees; Hussain was The Fresh Diet's Regional Delivery Manager and Plaintiff Collado was The Fresh Diet's delivery driver.

76. Hussain also used The Fresh Diet's email address, namely, syed@thefreshdiet.com.

77. Upon information and belief, Hussain is now The Fresh Diet's Director of Logistics.

78. Plaintiffs reported to work at The Fresh Diet's facility.

79. Hussain frequently directed Plaintiffs to take part in meal-preparation work at The Fresh Diet's facility.

80. At all relevant times, Late Night did not have a facility; rather, Plaintiffs met, worked at, and picked up meals from The Fresh Diet.

81. None of The Fresh Diet's meals or the meals' packaging reflected a connection with Late Night; all meals and packaging delivered by Plaintiffs were clearly marked with the words "The Fresh Diet."

82. Defendants The Fresh Diet and Late Night jointly were responsible for managing Plaintiffs and paying Plaintiffs' wages.

83. Hussain had the power to hire and fire Plaintiffs, as well as the rest of the drivers for Late Night, and indeed did hire and fire drivers. Drivers that Hussain terminated from working for Late Night could not deliver meals for The Fresh Diet.  No driver delivered food for The Fresh Diet that was not working for Late Night.

84. Hussain directly controlled Plaintiffs' work schedules and conditions of employment, determined the rate and method of payment, and kept records regarding their employment.

85. Defendant Schlass, as COO of The Fresh Diet, has the right to supervise, direct and control Hussain.

86. Schlass frequently personally visits The Fresh Diet food preparation facility in Brooklyn and has had direct involvement in the management and operations of that facility, including delivery operations.

87. Schlass, a partner at The Fresh Diet, discussed deliveries with Hussain.

88. Upon information and belief, Duchman has the right to control all aspects of The Fresh Diet's operations including the right to supervise, direct and control all persons employed by Defendants The Fresh Diet, including Schlass, Hussain, and Late Night.

89. The Fresh Diet subjected Plaintiffs to its policies, including setting the period by which Plaintiffs had to deliver the meals and how Plaintiffs were to handle the meals.

90. The Fresh Diet gave Late Night direction regarding Plaintiffs' pay structure, including directing Late Night to pay Plaintiffs by the mile driven.

91. Many of the Plaintiffs had car magnets, ID cards, hats, bags, and other material that stated "The Fresh Diet" with The Fresh Diet logo, which Hussain distributed to Plaintiffs.

92. The Fresh Diet since promoted Hussain from his job as New York Regional Manager of Late Night to the Director of Logistics for The Fresh Diet, Inc.

**Innovative's and New Fresh's Involvement**

93. On August 15, 2014, by a reverse triangle merger, Innovative acquired The Fresh Diet, which became a wholly owned subsidiary of Innovative.  Innovative created FD

Acquisition Corp., which merged with The Fresh Diet, The Fresh Diet being the surviving company.

94. Upon closing of the merger, The Fresh Diet operated as a wholly-owned subsidiary of Innovative subject to the complete oversight of Innovative's board of directors and Innovative's President and Chief Executive Officer.

95. As Plaintiffs in the above-captioned case were named or opt-in plaintiffs in Hernandez I, and Innovative was involved in the litigation of Hernandez I, Innovative had notice of this action prior to acquiring The Fresh Diet.

96. Duchman sold his ability to control The Fresh Diet to Innovative.

97. Innovative provided all The Fresh Diet's financing.

98. For example, Innovative invested one million dollars ($1,000,000) in funding directly to The Fresh Diet.

99. Innovative controlled all aspects of The Fresh Diet, including, but not limited to, its operations, the hiring and firing of employees, the payment of wages, and legal issues.

100. For example, Innovative retained attorneys to represent The Fresh Diet in Hernandez I.

101. As The Fresh Diet's successor, Innovative was immediately responsible for making sure that The Fresh Diet's current and former employees were paid in accordance with the FLSA and NYLL.

102. On February 9, 2016, Innovative entered into a letter of intent to sell a controlling interest in The Fresh Diet to New Fresh.

103. On February 9, 2016, Innovative appointed Duchman as interim Chief Executive Officer of The Fresh Diet.

104. On February 23, 2016, the transaction was completed, with Innovative selling ninety percent (90%) of its ownership in The Fresh Diet to New Fresh, which is controlled by Duchman.

105. Upon information and belief, Duchman repurchased The Fresh Diet because Innovative purportedly intended to bankrupt the Fresh Diet to avoid judgment in Hernandez I.

106. On or about July 22, 2016, The Fresh Diet's operations abruptly ceased.

107. On information and belief, The Fresh Diet filed an assignment for benefit of creditors—the Florida equivalent of a bankruptcy—in or around July 2016.

108. According to Daniel Gielchinsky, Esq., Duchman's general counsel, Innovative drove The Fresh Diet "to financial ruin" by "taking on too many employees" and "attempting to grow too quickly without a set expansion plan," showing definitively that Innovative had controlled The Fresh Diet's operations, including the ability to, for instance, control employment practices, retain and hire employees, determine employee compensation, and develop The Fresh Diet's growth strategy.

109. Since Innovative controlled employment practices, specifically as they relate to retention, hiring, and employee compensation, and these issues are central to this action, Innovative is a necessary defendant in this action.

110. As Duchman was the original founder of The Fresh Diet and New Fresh, New Fresh had notice of this pending action prior to acquing The Fresh Diet.

111. In Hernandez I, Innovative claimed that The Fresh Diet could not pay the settlement amount; therefore, upon information and belief, The Fresh Diet did not have the ability to provide the relief Plaintiffs seek.

112. Upon information and belief, The Fresh Diet—whether independent, owned by

Innovative, or owned by New Fresh—has always been a business that prepares meals for delivery to its customers.

113. Upon information and belief, The Fresh Diet—whether independent, owned by Innovative, or owned by New Fresh—has always employed the key same core group of individuals, including Defendants Duchman, Schloss, and Hussain, and works from the same warehouses in New York.

114. Upon information and belief, The Fresh Diet—whether independent, owned by Innovative, or owned by New Fresh—has demanded of its delivery drivers the same core responsibilites, duties, and conditions.

115. Upon information and belief, The Fresh Diet—whether independent, owned by Innovative, or owned by New Fresh—has always used the same equipment and methods of production and produces the same final product, that is, prepared meals for delivery to its clients.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION (FOR WAGE AND HOUR PLAINTIFFS)**
**Defendants Violated the FLSA by Failing to Pay Overtime**

116. Wage and Hour Plaintiffs reallege and incorporate by reference paragraphs 1 through 115 as if they were set forth again herein.

117. At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

118. Upon information and belief, at all relevant times, The Fresh Diet has had annual gross revenues in excess of $500,000.

119. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their New York City tri-state metropolitan area food delivery

employees for their hours worked in excess of forty (40) hours per workweek.

120. As a result of Defendants' willful failure to compensate its New York City tri-state metropolitan area food delivery employees, including Wage and Hour Plaintiffs, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

121. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

122. At all relevant times, Defendants acted in reckless disregard of the applicable provisions of the FLSA and the regulations of the U.S. Department of Labor.

123. Due to Defendants' willful violation of the FLSA, Wage and Hour Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, an equal additional amount as liquidated damages, additional liquidated damages for unreasonable delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION (FOR WAGE AND HOUR PLAINTIFFS)**
**Defendants Violated NYLL by Failing to Pay Overtime**

124. Wage and Hour Plaintiffs reallege and incorporate by reference paragraphs 1 through 123 as if they were set forth again herein.

125. At all relevant times, Wage and Hour Plaintiffs were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

126. Defendants willfully violated Wage and Hour Plaintiffs rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its

applicable regulations.

127.   As a direct and proximate consequence of Defendants' illegal conduct, Wage and Hour Plaintiffs have been denied wages, salary, employment benefits, professional advancement, and actual monetary losses.

128.   Wage and Hour Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 663(1).

**THIRD CAUSE OF ACTION (FOR RETALIATION PLAINTIFFS)**
**Defendants Violated the FLSA and NYLL by Terminating Retaliation Plaintiffs**

129.   Retaliation Plaintiffs reallege and incorporate by reference paragraphs 1 through 128 as if they were set forth again herein.

130.   Defendants terminated Plaintiffs Hernandez, Guzman and Correa because they participated in a lawsuit against Defendants asserting their rights pursuant to the FLSA and NYLL.

131.   29 U.S.C. § 215(a) prohibits any person to discharge any employee because such employee has filed any complaint under or related to the FLSA.

132.   NYLL § 215 prohibits an employer from discharging an employee because such employee has made a complaint that the employer has engaged in conduct that the employee believes violates any provision of the NYLL.

133.   As a direct and proximate consequence of Defendants' illegal conduct, Plaintiffs Hernandez, Guzman and Correa have been denied wages, salary, employment benefits, professional advancement, and actual monetary losses.

134.   Plaintiffs Hernandez, Guzman and Correa are entitled to compensatory damages,

liquidated damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

A.	on Plaintiffs' first claim, damages to be determined at trial, but in no event less than $500,000;

B.	on Plaintiffs' second claim, damages to be determined at trial, but in no event less than $500,000;

C.	on Plaintiffs' third claim, damages to be determined at trial, but in no event less than $1,000,000;

D.	an award of compensatory, assumed, and punitive damages;

E.	pre-judgment and post-judgment interest;

F.	attorneys' fees and costs; and

G.	such other and further relief as the Court deems just and proper.


Dated:	New York, New York
	October 10, 2016

	By:	  s/ Walker G. Harman, Jr.  
		Walker G. Harman, Jr. [WH-8044]
		THE HARMAN FIRM, LLP
		220 Fifth Ave., Suite 900
		New York, New York 10019
		(212) 425-2600
		wharman@theharmanfirm.com

		*Attorneys for Plaintiffs*