```
H1MJHERC                     Teleconference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FERNANDO HERNANDEZ, et al.,

             Plaintiffs,

        v.                              15 Civ. 1338 LAC JLC

THE FRESH DIET INC., et al.,

             Defendants.

------------------------------x
                                        January 24, 2017
                                        10:15 a.m.



Before:

                 HON. JAMES L. COTT,

                                        U.S. Magistrate Judge


                      APPEARANCES


THE HARMAN FIRM, PC
     Attorneys for plaintiffs
BY:  EDGAR M. RIVERA, Esq.   (In Court)
             Of counsel


FEDER KASZOVITZ, LLP
     Attorneys for defendants
BY:  DAVID J. SACK, Esq.     (In Court)
             Of counsel

JUDAH SCHLOSS, Appearing pro se   (In Court)

SCHER ZALMAN DUCHMAN, Appearing pro se (Telephonically)
```

1              (Teleconference in Open Court)
2              THE COURT:  Good morning.  Mr. Duchman, are you on the
3    line?  Can you hear me?
4              MR. DUCHMAN:  Yes, I am here.  Good morning.
5              THE COURT:  Were you able to hear the other people
6    when they spoke?
7              MR. DUCHMAN:  I did, yes.
8              THE COURT:  All right.  So we now know that Mr.
9    Duchman and Mr. Schloss are proceeding pro se.  What about the
10   other individual defendant Mr. Hussain, do we know anything
11   whatsoever about his status?
12             Do you know, Mr. Schloss?
13             MR. SCHLOSS:  From my knowledge, he is not aware of
14   the court case at all.  Since the previous law firm KBB, they
15   were defending him as an individual, as myself, but they were
16   only communicating with the Fresh Diet or the Fresh Diet
17   executives and they never communicated directly with Mr.
18   Hussain.
19             Since Fresh Diet has gone into bankruptcy, Mr.
20   Hussain, I am guessing, moved on to somewhere else, and the
21   only communication I have seen to him was the notices from KBB,
22   which were sent at the Fresh Diet e-mail address, which bounced
23   back immediately.  As far as I know, he is not aware of any of
24   this.
25             THE COURT:  Let me ask Mr. Rivera.  I did not look at

1   the docket sheet on this particular issue.  Has Mr. Hussain
2   been served with the complaint?
3            MR. RIVERA:  He was served through Kaufman Dolowich,
4   when they accepted service on behalf of all defendants,
5   including Mr. Hussain.  Also in the 12-19-16 order from the
6   court, Kaufman Dolowich was instructed to make sure all the
7   defendants, including Mr. Hussain, were aware of the conference
8   and what happened in the case.
9            THE COURT:  All right.  What about the fourth amended
10  complaint, has that been served?
11           MR. RIVERA:  The Fourth Amendment?
12           THE COURT:  Isn't that the operative complaint in the
13  case?
14           MR. RIVERA:  Yes.
15           THE COURT:  Has that been served?
16           MR. RIVERA:  No, I don't believe that has been served
17  on Mr. Hussain individually.
18           THE COURT:  How about on any of the defendants?
19           MR. RIVERA:  I am not sure right now if it has been
20  served.
21           MR. SCHLOSS:  If I could add to that and say, I
22  individually have not been served on either of the complaints.
23           THE COURT:  I think we need to put this case on a
24  track today.  So I think the first order of business is that
25  the fourth amended complaint, which we all agreed is the

1  operative complaint in the case, needs to be served.  Because
2  Mr. Hussain and Mr. Schloss and Mr. Duchman are all no longer
3  represented by counsel, they need to be served individually.
4          As to the other parties other than Innovative, all of
5  what I will call the Fresh Diet defendants need to be served as
6  well.  So once that happens -- and I guess let me ask this, Mr.
7  Sack -- has Innovative been served with the fourth ammended
8  complaint?
9          MR. SACK:  We have it through ECF.
10         THE COURT:  You're planning to move against that
11 complaint, right?  You're going to move to dismiss it, as you
12 have previously.  Is that correct?
13         MR. SACK:  Yes, your Honor, for Innovative, and then I
14 suppose one of the topics that I had for today's conference is
15 if the plaintiffs intend to move for essentially default
16 against The Fresh Diet, there are pleading deficiencies in the
17 fourth amended complaint as pertains to The Fresh Diet, and I
18 think as a matter of good order, we would have to raise them
19 even though they're essentially the same one that was raised
20 when The Fresh Diet had counsel with respect to the third
21 amended complaint.  We don't believe the fourth amended
22 complaint cured those deficiencies.
23         It would be substantially unfair to my clients, if
24 they have any liability at all, steming from liability to Fresh
25 Diet, to be prejudiced by a default judgment which may carry

1    the law of the case with it, so we would have to preserve those
2    arguments.
3             THE COURT:  I don't know exactly how that plays out,
4    frankly, but we have to take this one step at a time.
5             I understand that if the corporate entities are not
6    represented by counsel, and they're served with a fourth
7    amended complaint, and they don't respond to it, they will then
8    be in default.  Then if the plaintiffs choose to move for
9    default judgment, then at that point in time it seems to me
10   that would be the opportunity to interpose whatever points you
11   think need to be presented, whether they are directly related
12   to your own client or not.
13            I don't know as a practical matter whether you have
14   standing on some level to make arguments since you're not
15   representing The Fresh Diet defendants.  If your view is that a
16   default against The Fresh Diet defendants would impact
17   adversely your client Innovative, then obviously you need to
18   take whatever actions you think are appropriate to protect the
19   interests of your client.
20            Are some of these Fresh Diet entities, in fact, in
21   bankruptcy as we speak?  That has never been brought to the
22   court's attention in any formal way.
23            Do you know, Mr. Sack?
24            MR. SACK:  Your Honor, the best information I have is
25   the only entity that still exists or was active or is active is

1   The Fresh Diet, Inc., and what they did is they filed under
2   Florida state law an assignment for the benefit of creditors,
3   which is similar to but does not equal a federal bankruptcy.
4           So it still exists as a corporate entity.  There is no
5   stay we know of, and there is a trustee, or as they call it
6   under Florida law, assignee who is supposed to be managing the
7   affairs of the company and trying to get the creditors paid.
8           We have had no communication other than -- Innovative
9   has its own claims filed with the trustee, but we have no other
10  knowledge about what he is doing or not doing in terms of
11  marshaling the assets.
12          MR. RIVERA:  Plaintiffs have the same information with
13  the addition that New Fresh Co. LLC is also an active entity,
14  The Fresh Diet, Inc. and New fresh Co. LLC.
15          THE COURT:  Mr. Rivera, how much time do you need to
16  serve the fourth amended complaint on the defendants?
17          MR. RIVERA:  We'll send it to a process server today,
18  and it should be served within two weeks.
19          THE COURT:  Okay.  Now, I docketed both letters that I
20  had received from Mr. Duchman and Mr. Schloss by e-mail.  You
21  have Mr. Duchman's address now in Florida.  I am not sure we
22  have your address, Mr. Schloss, on the docket which we need to
23  have at this point.  Do we?  I am not sure that was in your
24  letter to the court.  Do you want to state the proper address
25  you can be served at?

1           MR. SCHLOSS:  Yes.  881 Eastern Parkway, No. 6,
2    Brooklyn, New York 11213.
3           THE COURT:  This is one of the reasons we have a Court
4    Reporter today, so you can get a transcript of this proceeding.
5    I would ask the following:
6           If a transcript of this proceeding is ordered, that a
7    copy of the transcript be made available by plaintiffs and
8    Innovative, to share the cost and disseminate that to Mr.
9    Duchman and Mr. Schloss since they are proceeding pro se, okay?
10          So you're going to serve the complaint within two
11   weeks.  Thereafter, I gather, Mr. Sack, you want to renew your
12   motion?
13          MR. SACK:  Yes.
14          THE COURT:  Is that correct?
15          MR. SACK:  Yes, your Honor.
16          THE COURT:  Without trying to preempt Judge Carter,
17   and I understand he has a conference tomorrow in the other
18   case, why don't we tentatively set a schedule that you can
19   report to him tomorrow, and if he obviously wants to alter it
20   in some way, he can.
21          Let's assume you're served within two weeks.  So that
22   would be the second week of February.  So how much time would
23   you want to renew the motion?
24          MR. SACK:  30 days after that would be fine, your
25   Honor.

1          THE COURT:  Shall we say March 7th?
2          MR. SACK:  Could I have until the end of the week,
3     March 10th?
4          THE COURT:  Or the previous we week, the 3rd?  You
5     need the 10th?
6          MR. SACK:  Yes.
7          THE COURT:  March 10th it is.
8          Mr. Rivera, how much time do you want to respond to in
9     Innovative's motion?
10         MR. RIVERA:  21 days, your Honor.
11         THE COURT:  We'll give you until the end of the month,
12    until the 31st, and a week for any reply.
13         MR. SACK:  That would be April 7th is fine, your
14    Honor.
15         THE COURT:  Yes.  So just to be clear, Mr. Duchman and
16    Mr. Schloss, I don't believe that motion will impact you,
17    although obviously if you believe there is some basis on which
18    there is a motion to dismiss this fourth amended complaint
19    against you, then you can make such a motion, and I would
20    direct that you do it on this same schedule, meaning once
21    you're served with the fourth amended complaint, if there is a
22    motion to dismiss the complaint as against you that you want to
23    make, you should file it by March 10th.  Otherwise, what I
24    would suggest you do is that you file an answer to the
25    complaint no later than March 10th.

1     If you haven't received it, you should consult with
2  the Pro Se Office of the Court because they have information
3  that they can provide to you that is designed for pro se
4  litigants on how to conduct yourself in a litigation, including
5  those involved in filing an answer and other such things.
6  There is what they refer to as a pro se manual.  I believe a
7  lot of it is online at this juncture, but I encourage you to be
8  in touch with them, either gain access to it online or
9  otherwise get a copy.
10     Have you understood that, Mr. Duchman?
11     MR. DUCHMAN:  Yes, I understand.
12     MR. SCHLOSS:  Yes.
13     THE COURT:  March 10th.  Assuming you have been served
14  no later than February 7th, which is two weeks from today,
15  which Mr. Rivera is suggesting he will have, you all have until
16  March 10th to move or answer with respect to the fourth amended
17  complaint, and we have set a schedule for that motion.
18     What else do we need to do today?  What else is on
19  people's agendas?  I am happy to also set a discovery schedule
20  at this time at least as it relates to the non-Innovative
21  defendants, unless we should do that as well, although I assume
22  you want to not have discovery proceed until your motion is
23  decided?
24     MR. SACK:  That's correct, your Honor.
25     MR. RIVERA:  At the May 17th, 2016 conference, your

1   Honor ordered we meet and confer about discovery or we go
2   through paper discovery, so we did that.  Discovery is not that
3   extensive since we had done discovery in the past action.
4            You also ordered that or you allowed the defendants to
5   be able to serve two sets of interrogatories, and then at that
6   point we would have a status conference and be back before the
7   court and decide what depositions to be taken.  I would like
8   that the court continue with that schedule, so that way
9   discovery, some discovery can be completed while these motions
10  are pending.
11           MR. SACK:  The problem with that, your Honor, we don't
12  know yet -- I am assuming for the purposes of this conversation
13  that The Fresh Diet is not going to appear.  If they do appear,
14  obviously, that changes everything, but I think a lot of the
15  discovery that was contemplated previously had to do with
16  discovery from The Fresh Diet or some of the other corporate
17  defendants about their employment records, et cetera.
18           That is something Innovative certainly does not have,
19  and I think that the contours of discovery will be impacted by
20  whether there is a default or whether we proceed in some
21  fashion.
22           THE COURT:  Well, what I would suggest you do is that
23  sometime between March 10th and March 31st, after the
24  defendants have been served and after the defendants have
25  either answered or moved with respect to the fourth amended

1  complaint, that you have a meet-and-confer and that the
2  plaintiffs identify what documents that they don't already have
3  from the prior lawsuit that they think they could get in the
4  pending lawsuit either from Innovative or from any of the
5  individual defendants, and then you'll discuss what is
6  feasible, what is available, what is appropriate, et cetera.
7        Then I suggest we should have another conference in
8  April after the motion is fully submitted before Judge Carter,
9  and then we can discuss whether there should be any additional
10 paper discovery and what the scope of deposition discovery
11 should be in this case.  Presumably the other case may be
12 farther along at that point as well and that may in theory have
13 some impact on what we're doing here.
14       So I guess to Mr. Rivera's point, why don't you have a
15 meet-and-confer and figure out what the proper scope of
16 discovery is.  I mean in a typical case, you're not really
17 talking about discovery until after the issue has been joined
18 and the issue won't be joined until March 10th in this case.
19       I suggest in that window of time, whether you've moved
20 or answered, that the parties have a meet-and-confer, see what
21 discovery there is, and then we can have a court conference in
22 April and decide what other discovery either you've agreed to
23 or you want me to order.  Then a few days before the conference
24 we have in April, anyone who wishes to can write the court and
25 tell me what they want and what the other side's position is,

1   et cetera, so I have some sense whether there are going to be
2   disputes or not.
3           So I will say because Mr. Schloss and Mr. Duchman are
4   not on ECF, that to the extent you want to correspond with the
5   court further by e-mail, as you have in the past, that's fine
6   and I can docket whatever correspondence you send, but in the
7   future you can't just send it to me.  You also need to copy Mr.
8   Rivera's law firm and Mr. Sack's law firm.  So not on the
9   record now, but before the close of this conference, we'll make
10  sure that you have that information if you don't, and it is
11  available on the docket sheet of the case as well.  All right.
12          So we'll pick a date in April.  We'll look at our
13  calendar and if you hold on, perhaps we can check it now.
14          (Off-the-record discussion)
15          THE COURT:  So we're going to do it, I think we'll say
16  Thursday, April 6th, at 10:00 o'clock.
17          MR. SCHLOSS:  I don't have a calendar.  Is that
18  Passover?
19          THE COURT:  It is before the holidays.  Passover is
20  the following week.  That is why I am picking this week.
21          MR. SCHLOSS:  Great.
22          THE COURT:  So Thursday, April 6th, at 10:00 o'clock,
23  the same time.  Mr. Duchman, if you're in Florida, we can patch
24  you in by telephone again.
25          MR. DUCHMAN:  Thank you, your Honor.  I will try to

1   make it if I can.
2            THE COURT:  If you're in New York, you should come.
3            If you're in Florida, we can patch you in.  Let us
4   know one way or the other.  I would say no later than April
5   3rd, you should write to the court and let me know sort of
6   where things stand as far as discovery is concerned and what
7   your respective positions are with respect to Mr. Rivera.  If
8   there are documents you think you should have and don't have,
9   let me know.  If there are certain depositions you want to take
10  and parties are not agreeable to, let me know or vice versa,
11  and we'll resolve all of that on the 6th of April.
12           I am assuming that you are, in fact, going to have the
13  complaint served on the schedule we talked about.  If you don't
14  serve the complaint by March 10th, and technically under Rule 4
15  you have 90 days, although I think the time probably has been
16  running to serve it.  In any event, I will give you until March
17  10th at the latest to serve it, but I am assuming you're going
18  to serve it within two weeks and that will allow us to go
19  forward with the schedule.  If service changes, then the
20  parties can seek additional time to file their responses to the
21  amended complaint.
22           Is there anything else that we need to address at this
23  time from your standpoint, Mr. Rivera?
24           MR. RIVERA:  No, your Honor.
25           THE COURT:  Mr. Sack?

1        MR. SACK:  Nothing, your Honor.
2        THE COURT:  Mr. Schloss?
3        MR. SCHLOSS:  Nothing.
4        THE COURT:  Mr. Duchman, anything else?
5        MR. DUCHMAN:  No.  Thank you, your Honor.
6        THE COURT:  So we'll put an order out on the docket,
7   which I assume the best way for us to communicate with you all,
8   Mr. Duchman and Mr. Schloss, is to e-mail you things.
9        Is that the easiest and best thing to do or would you
10  rather us mail things to you?
11       MR. SCHLOSS:  E-mail for me is definitely the best.  I
12  did set up some sort of log-in to ECF.
13       THE COURT:  You did?
14       MR. SCHLOSS:  It doesn't give me access to submit, but
15  just to view.
16       THE COURT:  If you wish to register on ECF for the
17  purposes of this case, you can submit a request to the court.
18  There is some paperwork to do so, and I would be happy to
19  approve that if you would like to be on ECF for the case.  It
20  is a lot easier.
21       MR. SCHLOSS:  Yes.
22       THE COURT:  You can talk to the Pro Se Office while
23  you're here in the building and you can share what you learn
24  with Mr. Duchman.  If you both want to get on the case for ECF
25  purposes, that makes it a lot easier for the lawyers and the

1    court.  Until that happens, we'll plan to e-mail things to you
2    in the first instance.  If you submit a request for permission
3    to participate in the case by ECF, I will approve it.
4              MR. SCHLOSS:  Okay.
5              THE COURT:  All right, gentlemen.  Thank you very much
6    and I will see you in April.
7              (Court adjourned)