UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                    :

FERNANDO HERNANDEZ, JUANY   :
GUZMAN, BRANDON ROSE, IRVING  :  Case No.:  15-CV-1338 (ALC)
COLLADO, ANDRES SALAS, BENGALY:
KONATE, MICHAEL J. RODEIGUEZ,  :
WILTON A. DARDAINE, and JUAN   :
CORREA,                      :
                                      :

             Plaintiffs,      :
                                        :

           -- against --     :
                                        :

THE FRESH DIET, INC., LATE NIGHT  :
EXPRESS COURIER SERVICES, INC.  :
(FL), FRESH DIET EXPRESS CORP.   :
(NY), THE FRESH DIET – NY INC. (NY), :
FRESH DIET GRAB & GO, INC. (FL)   :
a/k/a YS CATERING HOLDINGS, INC. :
(FL) d/b/a YS CATERING, INC. (FL),  :
INNOVATIVE FOOD HOLDINGS, INC. :
(FL), FRESH DIET EXPRESS CORP. (FL),:
NEW FRESH CO., LLC (FL),        :
SYED HUSSAIN, Individually, JUDAH  :
SCHLOSS, Individually, and SCHER   :
ZALMAN DUCHMAN, Individually,   :
                                        :

             Defendants.     :
------------------------------------------------------x

**DEFENDANT INNOVATIVE FOOD HOLDINGS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FOURTH AMENDED COMPLAINT: THEIR FIFTH PLEADING**

FEDER KASZOVITZ LLP
845 Third Avenue
New York, New York 10022
Telephone: (212) 888-8200

Attorneys for Defendant
Innovative Food Holdings, Inc.

<u>Of Counsel:</u>
Howard I. Rhine
David Sack

## Table of Contents

|  |  | Page |
|---|---|---|
| Preliminary Statement | | 1 |
| Statement of Facts | | 4 |
| ARGUMENT | | 7 |
| I. | PLAINTIFFS' WAGE AND HOUR CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM | 7 |
| II. | THE COMPLAINT SHOULD BE DISMISSED AS TO INNOVATIVE | 10 |
|  | A.    FLSA/Wage And Hour Claims | 10 |
|  |        1.    Direct Liability | 10 |
|  |        2.    Group Pleading | 12 |
|  |        3.    Joint Employer | 13 |
|  | B.    Retaliation | 14 |
| III. | INNOVATIVE WAS NOT A SUCCESSOR TO FRESH DIET NOR IS THERE ANY BASIS TO JUSTIFY A PIERCING OF THE CORPORATE VEIL | 15 |
|  | A.    Innovative Is Not A Successor To Fresh | 16 |
|  | B.    Innovative Cannot Be Liable Under A Veil Piercing Theory | 19 |
| IV. | DISMISSAL SHOULD BE WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD | 23 |
| Conclusion | | 25 |

**Table of Authorities**

**Cases**                                                                                                                      **Page**

*Amponin v. Olayan America Corp.*,
  2015 WL 1190080 (S.D.N.Y. Mar. 16, 2015) ........................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937 (2009) ........................................................................................ 8

*Battino v. Corrella Fifth Avenue LLC*,
  861 F. Supp.2d 392 (S.D.N.Y. 2012) ...................................................................................... 21

*Bautista v. Beyond Thai Kitchen, Inc.*,
  2015 WL 5459737 (S.D.N.Y. Sep. 17, 2015) ........................................................................ 16

*Bernard v. Kee Manufacturing Co.*,
  409 So.2d 1047 (Fla. 1982) ..................................................................................................... 17

*Corporate Express Office Products, Inc. v. Phillips*,
  847 So.2d 406 (Fla. 2003) ....................................................................................................... 17

*Dania Jai-Alai Palace, Inc. v. Sykes*,
  450 So.2d  1114 (Fla. 1984) ............................................................................................... 20, 21

*DeJesus v. HF Management Services, LLC*,
  726 F.3d 85 (2d Cir. 2013) ................................................................................................*passim*

*Diaz v. Consortium for Worker Education Inc.*,
  2010 WL 3910280 (S.D.N.Y. Sep. 28, 2010) ........................................................................ 13

*EEOC v. Nichols Gas & Oil, Inc.*,
  518 F. Supp.2d 505 (W.D.N.Y. 2007) ....................................................................... 17, 18, 20

*Garcia v. Paris Maintenance*,
  15-cv-0663 (E.D.N.Y.) ...................................................................................................... 10, 24

*Gasparini v. Pordomingo*,
  972 So. 2d 1053 (Fla. 3d DCA 2008) ..................................................................................... 21

*Gisomme v. Healthcorp*,
  2014 WL 2041824 (E.D.N.Y. May 15, 2014) ....................................................................... 13

*Hangzhou Kailai Neckwear Apparel Co. v. NCP Direct Sourcing, Inc.*,
15 cv 1441 (S.D.N.Y. Aug. 17, 2016) ......................................................................... 22

*Hayden Capital USA, LLC v. Northstar Agri Industries*,
2012 WL 1449257 (S.D.N.Y. Apr. 22, 2012) ............................................................. 17

*Hinckley v. Seagate Hospitality Group*,
2016 WL 6524314 (W.D.N.Y. Nov. 11, 2016) ............................................................ 9

*Irizarry v. Catsimatidis*,
722 F.3d 99 (2d Cir. 2013) ......................................................................................... 16

*Lopez v. Acme American Environmental Co.*,
2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) ......................................................... 12, 24

*Lundy v. Catholic Health System of Long Island*,
711 F.3d 106 (2d Cir. 2013) ......................................................................................... 8

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
723 F.3d 192 (2d Cir. 2013) ......................................................................................... 8

*Old W. Annuity & Life Ins. Co. v. Apollo Grp.*,
2008 WL 2993958 (M.D. Fla. Aug. 1, 2008) ............................................................ 21

*Paz v. Piedra*,
2012 WL 12518495 (S.D.N.Y. Jan. 11, 2012) ......................................................... 12

*R.C.M. Executive Gallery Corp. v. Rols Capital Co.*,
901 F. Supp.2d 630 (S.D.N.Y. 1995) ......................................................................... 18

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.*,
2005 WL 22833 (S.D.N.Y. Jan. 5, 2005) .................................................................. 19

*Schumacher v. Richards Shear Co.*,
59 N.Y.2d 239, 451 N.E.2d 195, 464 N.Y.S.2d 437 (1983) ..................................... 17

*Seminole Boatyard, Inc. v. Christoph*,
715 So. 2d 987 (Fla. 4th DCA 1998) ......................................................................... 21

*Tommy Lee Handbags Manufacturing Ltd. v. 1948 Corp.*,
971 F. Supp.2d 368 (S.D.N.Y. 2013) .................................................................. 17, 20\

*Tracy v. NVR, Inc.*,
667 F. Supp.2d 244 (W.D.N.Y. 2009); ................................................................ 13, 14

*XL Vision, LLC v. Holloway,*
   856 So. 2d 1063 (Fla. 5th DCA 2003)....................................................................................... 21

*Zhou v. Wu,*
   2015 WL 925962 (S.D.N.Y. Mar. 3, 2015) ......................................................................... 13, 14

Defendant Innovative Food Holdings, Inc. ("Innovative"),[1] by its undersigned attorneys, respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b), to dismiss Plaintiffs' Fourth Amended Complaint (the "Fifth Pleading") in its entirety, with prejudice, and without leave to replead.

## Preliminary Statement

The Fifth Pleading is a perfect example of "Notice Pleading." Each time Plaintiffs Notice a fatal flaw in their pleading (pointed out by Defendants), they amend the pleading and change the facts in an attempt to cure the deficiency. The problem with Plaintiffs' *modus operandi*, is that the resulting Fifth Pleading is reduced to formulaic allegations of "fact" designed to fit the elements of their claims which are internally contradictory, contradictory to the allegations made by Plaintiffs in prior iterations of their Complaint and in prior submissions to this Court, are inherently implausible, and ignore the admonishment of the Second Circuit in *DeJesus v. HF Management Services, LLC*, 726 F.3d 85, 90 (2d Cir. 2013), that the Second Circuit's pleading standard "*is not an invitation to provide an all-purpose pleading template*") (emphasis added).

Perhaps the most glaring example of this is Plaintiffs' new allegations concerning their overtime claims. In paragraph 36 of the Third Amended Complaint (and indeed in each prior

---

[1] While this motion is being made solely on behalf of Innovative, for the reasons set forth in section I below, the Fifth Pleading fails to state a claim against any defendant, and should be dismissed in its entirety. Moreover, a review of the docket sheet as of March 10, 2017 contains no proof of service upon The Fresh Diet, Inc., any of its related entities, or any of the individual defendants, nor evidence of a request by Plaintiffs for additional time to complete service. If service of the Fifth Pleading was not completed as to the remaining parties by February 7, 2017 as set forth in this Court's Order of February 1, 2017, the Fifth Pleading should be dismissed in its entirety for this additional reason.

iteration of the Complaint)[2], Plaintiffs allege, as a group, that they "*often* worked in excess of forty (40) hours a week." (Emphasis added.) When Plaintiffs, by reason of Defendants' prior pre-motion letters and filed motion to dismiss, "Noticed" that this allegation fails to state an FLSA claim, they "amended" their pleading and changed the facts to allege, as to each wage and hour plaintiff, that he or she "worked in excess of forty (40) hours *each week*." (Fifth Pleading ¶¶ 35-43) (Emphasis added.) That Plaintiffs adjusted their allegation from "often" to "each week"[3] without pleading any facts to substantiate the actual number of hours they claim to have worked (and indeed, conceding, in the case of one plaintiff, that he has no idea how many hours he actually worked (Fifth Pleading ¶ 39)), *and* that the Fifth Pleading utterly fails to allege the number of hours worked by any plaintiff in any workweek, clearly reflects that this new allegation is simply made up to satisfy the correct pleading standard and survive a motion to dismiss, actual facts notwithstanding. The Court should not countenance such pleading machinations.[4]

---

[2] A schedule demonstrating the major pleading differences across the now five iterations of the Complaint is attached as Appendix A hereto for the convenience of the Court.

[3] In paragraph 46 of the Fifth Pleading, Plaintiffs revert back to alleging that they "often" worked in excess of forty hours a week. Which is it, always or often?

[4] Similarly, Plaintiffs *now* allege that Defendant Hussain "was the New York Regional Delivery Manager of Late Night and The Fresh Diet" (Fifth Pleading ¶ 23), whereas Plaintiffs previously stated as an undisputed fact (in ¶ 10 of their Counter-Statement of Disputed Material Facts in opposition to Defendants' motion for summary judgment in *Hernandez, et al. v. The Fresh Diet, Inc.*, *et al.*, 12-cv-4339 ("Hernandez I"), ECF Docket No. 38, adopted by the Court in its Opinion and Order, dated September 29, 2104, Docket No. 163 at 2) that Hussain was the "Delivery Manager for Late Night." This factual disparity gives rise to the inference that Plaintiffs are now alleging that Hussain was the manager for both companies not based on any facts, but rather so that their pleading conforms to their legal theory of joint employer. Even the concept of liberal amendment of pleadings should not allow Plaintiffs to invent facts to conform to their claims.

Despite having been given *four* opportunities to craft a plausible pleading, Plaintiffs have failed to make the most basic allegations that support a claim for relief under the FLSA and New York Labor Law ("NYLL"), and the Fifth Pleading should be dismissed in its entirety for this reason alone.

More starkly, even if the Court declines to dismiss the Fifth Pleading as a whole, against all Defendants, it must be dismissed in its entirety as against Innovative. The Fifth Pleading essentially concedes on its face that there can be no primary FLSA violation or joint employer liability against Innovative – since Innovative is not alleged to be an employer, nor did it have an ownership interest in alleged joint employer The Fresh Diet, Inc. ("Fresh") until a year and a half *after* the last FLSA violation is alleged to have occurred.

Nor do Plaintiffs plead sufficient facts to support the new theories articulated by Plaintiffs for the first time in opposition to Innovative's motion to dismiss the Third Amended Complaint (the prior iteration), namely that Innovative is liable as a successor to Fresh, or that Fresh's corporate veil can be pierced to reach Innovative. The former argument fails as a matter of law, as the Fifth Pleading itself alleges that Fresh continued to operate as its own entity, whether owned by its original owners (prior to August 15, 2014), Innovative (after August 15, 2014), or its new owners, Defendant "New Fresh" (subsequent to February 2016). (Fifth Pleading ¶¶ 112-115) The latter veil piercing argument fails on its face as a matter of law, since the corporate veil can be pierced only with a showing of complete control and dominion (alter ego), *and* improper conduct. As shown herein, publicly available information of which the Court can take judicial notice negates both prongs. It cannot be disputed that the alter ego allegations with respect to Innovative could not have been true at the time the alleged FLSA and NYLL violations are said to have occurred – Innovative was a stranger to Fresh until at least 18

3

months after the last alleged violation – and that even when Innovative purchased Fresh's stock, Fresh continued to be operated by separate corporate officers. (*See* Declaration of David Sack, executed March 10, 2107 (the "Sack Decl."), Exs. C and F)  Moreover, Plaintiffs cannot sustain a claim that Innovative used Fresh's corporate form to deceive them.  All financial transactions between Innovative and Fresh, including the merger agreement and all loans, were disclosed in Innovative's public filings with the SEC, available for Plaintiffs to review.  More pointedly, Plaintiffs do not (and cannot) allege that Innovative stripped Fresh of its assets when in fact the public filings, and Plaintiffs' own allegations (Fifth Pleading ¶¶ 97-98) show that the opposite is true – the infusions of cash to Fresh by Innovative actually kept it afloat during the time that Innovative owned Fresh.

The Fifth Pleading should be dismissed with prejudice and without leave to amend.  The Fifth Pleading takes the concept of liberality in permitted amendments to the breaking point, and beyond.  As set forth above, the Fifth Pleading makes a mockery of notice pleading because its allegations are based not on fact, but on boilerplate trying to conform to the pleading requirements designed simply to push the Complaint past a motion to dismiss.[5]  That Plaintiffs cannot adequately plead operative facts that would give rise to liability on their fifth attempt – after having the benefit of participating in discovery in Hernandez I, and after having almost three years to get their facts straight – is the clearest indicator that Plaintiffs can allege no operative facts because there are none, and this Complaint should be dismissed and lawsuit terminated for once and for all.

---

[5] We respectfully submit that while we have not followed the procedural route set forth in Fed. R. Civ. P. 11, this Court cannot be blind to these continued iterations of facts and law which, as a matter of law and logic, cannot be supported by a reasonable inquiry.  Plaintiffs' unfounded allegations in violation of Rule 11(b) should result in an award of fees and expenses being awarded to Innovative for its repeated required efforts to deal with five iterations of a pleading.

## Statement of Facts

The Fifth Pleading alleges that Plaintiffs were employed by "Defendants" as food delivery employees beginning in or about 2007. (Fifth Pleading, ¶ 34)  Plaintiffs allege that each week they worked in excess of 40 hours per week, and Defendants failed to pay them compensation of one and one-half times their regular hourly wages as overtime, in violation of the federal Fair Labor Standards Act and NYLL. (Fifth Pleading, ¶¶ 35-43, 46)  Plaintiffs allege that Defendants Fresh and Hussain were responsible for the terms and conditions of Plaintiffs' employment, and were responsible for the failure to pay the statutorily required wages. (Fifth Pleading, ¶¶ 46, 48-51, 82-84)

The Fifth Pleading fails to allege specific facts with regard to the number of hours *any* Plaintiff worked in *any* given week, except to state across the board that each worked in excess of 40 hours each week. (Fifth Pleading ¶¶ 35-43)  The Fifth Pleading fails to state the number of hours any Plaintiff worked, and that any Plaintiff was not paid the proper statutory wage over the course of any given week. (*Id.*)  The Fifth Pleading fails to allege that *any* Plaintiff was employed by any Defendant after March 15, 2003, and certainly not as of August 15, 2014. (Fifth Pleading ¶¶ 35-43, 53-54, 57-58)

Plaintiffs Hernandez, Guzman, and Correra allege that they were terminated on June 26, 2012, June 28, 2012, and March 15, 2013, respectively, in retaliation for their participation or attempted participation in Hernandez I. (Fifth Pleading ¶¶ 53, 54, 58)  Plaintiffs allege that these terminations are in violation of the FLSA and NYLL. (Fifth Pleading ¶¶ 60-61)

Plaintiffs allege that Defendant Late Night Express Courier Services, Inc. ("Late Night") and Fresh were joint employers of Plaintiffs. (Fifth Pleading, ¶¶ 62-92)  Plaintiffs do not allege

that Innovative was a joint employer of Plaintiffs, or allege any facts that could support such a claim. (*Id.*)

Plaintiffs allege, in a conclusory fashion with no factual support, that all Defendants (presumably including Innovative) "are part of a single business enterprise and are owned, controlled, and/or managed by the same core group of individuals." (Fifth Pleading, ¶ 32) This allegation is inconsistent with Plaintiffs' allegation that, following August 15, 2014, Fresh was "subject to the complete oversight of Innovative's board of directors and Innovative's President and Chief Executive Officer," (Fifth Pleading, ¶ 94),[6] at which point, Defendant Duchman "sold his ability to control The Fresh Diet." (Fifth Pleading, ¶ 96)[7] Without any citation to underlying facts, and in conclusory fashion, the Fifth Pleading alleges that "Innovative controlled all aspects of The Fresh Diet, including but not limited to, its operations, the hiring and firing of employees, the payment of wages, and legal issues." (Fifth Pleading, ¶ 99) This allegation, as a matter of common sense, even if true, can relate only to events that occurred subsequent to the August 15, 2014 purchase by Innovative of the stock of Fresh, and not to any acts that pre-dated the acquisition, including Plaintiffs' employment, Defendants' alleged wrongful termination of Plaintiffs, and Defendants' alleged failure to pay statutory overtime pursuant to the FLSA.

---

[6] This allegation attempts to mirror Innovative's November 16, 2015 Form 10-Q. Instead, it distorts and falsifies it. *See* Declaration of Walker Harman, Esq., dated May 24, 2016 ¶ 9, and Ex. B (Innovative's Form 10-Q, dated November 16, 2015, reproduced as Sack Decl., Ex. D), which states "Fresh Diet operates as an independent subsidiary subject to *its* board of directors and the Company President and CEO." (Emphasis added). Counsel, being aware of this filing, deliberately distorts it in paragraph 94 of the Fifth Pleading which adds the word "complete," found nowhere in the public filing, and misleadingly substitutes the word "Innovative" for "its," the latter referring to Fresh, not Innovative.

[7] Duchman, Schlass, and Hussain are not identified in any public filing of Innovative as directors or officers of Innovative. If they are the "core group of individuals" who managed Defendants prior to the acquisition, paragraphs 32 and 33 of the Fifth Pleading, are necessarily false.

Plaintiffs do not allege that Innovative's purported control of Fresh pre-dated its acquisition of Fresh on August 15, 2014 (*c.f.*, Fifth Pleading, ¶ 94), or that its alleged "control" or "management" of employment and wage matters extended to the acts and omissions of which Plaintiffs complain.

On or about February 23, 2016, Innovative sold 90% of its interest in Fresh to New Fresh, a newly formed LLC of which Duchman is a principal. (Fifth Pleading ¶¶ 102-104) Fresh continued its business operations until approximately July 22, 2016, after which it filed for an assignment in favor of its creditors. (Fifth Pleading ¶¶ 106-107) Plaintiffs allege, again without any reference to underlying facts, that "Duchman repurchased The Fresh Diet because Innovative purportedly intended to bankrupt the Fresh Diet to avoid judgment in Hernandez I." (Fifth Pleading ¶ 105) Contradicting this allegation, Plaintiffs allege, based on a newspaper article paraphrasing (not quoting) the opinion of an attorney for Mr. Duchman, that Fresh engaged in an assignment for the benefit of creditors because Innovative, when it owned Fresh's stock, attempted to expand its business too rapidly without a "set expansion plan" (Fifth Pleading ¶ 108); surely not a plan to bankrupt Fresh.

## ARGUMENT

### I.    PLAINTIFFS' WAGE AND HOUR CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even on their *fifth* attempt to plead a cognizable claim under the FLSA and NYLL, and even with the benefit of Defendants' prior fully briefed motion to dismiss the Third Amended Complaint, which cited, chapter and verse, the Second Circuit's pleading requirements to state an actionable claim, Plaintiffs still fail to allege plausible *facts* that would support their wage and hour claims against any Defendant.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). In the FLSA context, this means that each Plaintiff must allege that he or she was employed by each Defendant, and that he or she worked more than 40 hours in a given week, and was uncompensated for the time worked in excess of 40 hours. *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013). In other words, the factual underpinnings of an FLSA claim must be pleaded as to each Defendant and each Plaintiff. *Id.* (citing *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007)). Applying these criteria, the Second Circuit has held that, in order to state a claim that "nudges" over from the realm of the possible to one that is plausible under *Iqbal* and *Twombly*, an FLSA wage and hour plaintiff must allege with specificity that he or she worked more than 40 hours on a given week, and that he or she was not compensated for the time that exceeded 40 hours at a rate of 1.5 times the compensation paid for the first 40 hours. To satisfy this pleading requirement, a plaintiff must identify the number of hours worked in a given week, the rate of pay due and owing, and the employer's failure to pay the amount due and owing. *Lundy*, 711 F.3d at 114-115; *DeJesus*, 726 F.3d at 90 ("*Lundy's* requirement that plaintiffs must allege overtime without compensation in a 'given' workweek . . . is not an invitation to provide an all-purpose pleading template alleging overtime 'in some or all workweeks.') (citation omitted); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) (to satisfy the federal pleading standard, an FLSA plaintiff must plead with specificity the hours of unpaid work sufficient to support a plausible inference that he or she worked for more than 40 hours in a given week); *Amponin v. Olayan America Corp.*, 2015 WL 1190080 at *3-4 (S.D.N.Y. Mar. 16, 2015).

Here, in contrast to the well-established Second Circuit pleading standard, each of the Plaintiffs repeat the same boilerplate language that they "worked in excess of forty (40) hours each week (Fifth Pleading ¶¶ 35-43),[8] and that they were not paid overtime compensation of 1.5 times their regular hourly rate. (Fifth Pleading ¶ 46) This is precisely the type of boilerplate pleading allegation that supported a dismissal in *DeJesus*, 726 F.3d at 90, and Plaintiffs' failure – after four attempts, and after having been placed on express notice of the pleading requirements – to even attempt to specify the number of overtime hours they allege they worked uncompensated, demonstrates that Plaintiffs cannot allege overtime work with the requisite specificity to support a plausible FLSA claim under Rule 8, and their FLSA and NYLL claims should be dismissed.[9] *See also Hinckley v. Seagate Hospitality Group*, 2016 WL 6524314 at \*5 (W.D.N.Y. Nov. 11, 2016) (citing *DeJesus*) ("While this Court [the Second Circuit] has not required plaintiffs to keep careful records and plead their hours with mathematical precision, we have recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place. Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently

---

[8] One Plaintiff, Andres Salas, departs from this boilerplate to allege that "In fact, he believes that he worked in excess of sixty (60) hours each week he worked for Defendants." (Fifth Pleading ¶ 39) This allegation not only supports the inference that Plaintiff Salas does not know how many overtime hours he allegedly worked, but also that the remaining wage and hour Plaintiffs cannot even roughly estimate the number of hours they worked in any given workweek. *See DeJesus*, 726 F.3d at 90 (requiring a pleading to contain at least an estimate of the number of excess hours worked).

[9] Plaintiffs' newly made up allegations that each of them worked more than 40 hours each week is highly suspicious in light of the allegation in paragraph 36 of the Third Amended Complaint that all of the plaintiffs "often" – not always – worked more than 40 hours a week, as well as prior iterations of the Complaint in which Plaintiffs allege that they "often" worked overtime. (*See* Appendix A.) These newly made up "facts" lend credence to the conclusion that for this Fifth Pleading, counsel for Plaintiffs simply tailored the allegations to the pleading standards rather than conducting a thorough investigation as to each individual plaintiff, and truthfully pleading the number of overtime hours, if any, each alleges to have worked.

9

developed factual allegations"); *Garcia v. Paris Maintenance*, 15-cv-0663 (E.D.N.Y.), Report

and Recommendation of Magistrate Judge Lindsay (ECF Docket No. 57 at *15-*16) (May 4,

2016), *adopted*, 2016 WL 3093895 (E.D.N.Y. Jun. 1, 2016) (collecting cases, and holding

"plaintiff's allegation of an 'average' of 50 hours or more was insufficient to plead FLSA

overtime claim" and "plaintiff's allegation that he 'worked approximately fifty (50) to sixty (60)

hours per week' did not state an overtime wage claim") (internal citations omitted).

Accordingly, because Plaintiffs, on their fifth attempt, have failed to allege a plausible

FLSA claim for overtime wages in that they have not, and presumably cannot, allege that each

worked overtime hours in any given workweek, the number of overtime hours so worked, and

the rate of pay to which they claim to be entitled, the wage and hour claims should be dismissed

in their entirety as to all Defendants.

## II.      THE COMPLAINT SHOULD BE DISMISSED AS TO INNOVATIVE

### A.      FLSA/Wage And Hour Claims

#### 1.      Direct Liability

Plaintiffs Rose, Collado, Salas, Konate, Rodriguez, Dardaine, and Correra assert wage

and hour claims pursuant to the FLSA and NYLL.  In addition to the inadequacies of the

pleadings set forth in section I above, there are additional bases that support a dismissal as to

Innovative.

Plaintiffs allege that the misconduct about which they complain – failure to pay overtime

wages for work in excess of 40 hours in any given workweek – took place as early as 2007, but

in no event later than March 15, 2013.  (Fifth Pleading ¶¶ 35-43)

The operative allegations against Innovative include that it is a publicly traded Florida corporation that purchased a subsidiary corporation,[10] Defendant Fresh, on August 15, 2014. (Fifth Pleading ¶¶ 29, 93-94)[11]   After owning the shares of Fresh for approximately a year and a half – with Fresh continuing to operate its business as before – Innovative sold 90% of its interest in that company to New Fresh, a Florida LLC controlled by Duchman.  Plaintiffs allege that New Fresh continued to operate the business of Fresh until operations ceased in July 2016. (Fifth Pleading ¶¶ 104-106)

Significantly, the Fifth Pleading *fails* to plead:

- That Innovative employed any of the Plaintiffs at any time;

- That Innovative was required to, but failed to pay wages to the Plaintiffs;

- That Innovative was involved in any retaliatory conduct;

- That Innovative controlled Fresh or Late Night while Plaintiffs were employed by Late Night;

- That Innovative was the employer of any of the individual Defendants at any time; or

- That Innovative could otherwise be held to have had control or authority over Plaintiffs' employment since the operative facts giving rise to Plaintiffs' putative claims arose years before Fresh was purchased by Innovative.

---

[10] As noted below and as substantiated by the public filing upon which Plaintiffs' counsel relies, Innovative purchased the shares of Fresh from its shareholders in a reverse triangular merger.  We are not aware of the legal definition of the term or concept "purchased a subsidiary corporation."

[11] It should be noted that the Fifth Pleading does not assert that Plaintiffs were employed by Fresh, either.  (Fifth Pleading ¶ 64 (Plaintiffs were hired and compensated by Late Night) (Late Night was used as a channel for *hiring* and *compensating* Plaintiffs)) (emphasis added)). The claims asserted against Fresh arise only from its alleged status as a joint employer.  (Fifth Pleading ¶¶ 62-91)

Because the Fifth Pleading fails to make a single operative allegation as to how Innovative could possibly have engaged in conduct that violated the FLSA or NYLL with respect to the Plaintiffs herein, the wage and hour claims should be dismissed in their entirety as to Innovative pursuant to Fed. R. Civ. P. 12(b)(6).

### 2.    Group Pleading

While Plaintiffs belatedly realized[12] that Innovative is not similarly situated to the other Defendants, who were at least allegedly involved in operating Fresh's business while Plaintiffs were employed, and therefore distinguish between Innovative and the "Fresh Diet Defendants" (Fifth Pleading ¶ 29), Plaintiffs revert to improper group pleading, and contend that all "Defendants," presumably including Innovative, employed Plaintiffs (Fifth Pleading ¶¶ 34-43); improperly terminated Plaintiff Correa (Fifth Pleading ¶¶ 58-59); and set policy and employment terms for Late Night's delivery drivers. (Fifth Pleading ¶ 114) Whether Plaintiffs continue to allege that Innovative is responsible for conduct that occurred years prior to its involvement with Fresh's business, or whether these allegations remain as a result of sloppy draftsmanship, it is clear that the group pleading allegations fail to state a plausible claim against Innovative, and should be dismissed.

"The mere fact that each corporate defendant is owned in whole or major part by the same persons does not permit the Court to disregard their distinct legal status . . . a mere business partner [] of a worker's direct employer is not also that worker's employer." *Paz v. Piedra*, 2012 WL 12518495 at *7 (S.D.N.Y. Jan. 11, 2012) (citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003)). *See Lopez v. Acme American Environmental Co.*, 2012 WL 6062501 at *4 (S.D.N.Y. Dec. 6, 2012) ("Plaintiffs cannot escape their obligation under the FLSA to allege to

---

[12] This realization, presumably, came from Innovative's motion to dismiss the Third Amended Complaint, which dealt with Plaintiffs' improper group pleading.

allege a relationship of control between [the moving defendants] and themselves. Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees").

It is clear that this type of group pleading does not satisfy the pleading requirements under Fed. R. Civ. P. 8 and the FLSA, and that such inadequate pleadings serve as a basis to grant a dismissal at the pleading stage. *See, e.g.*, *Zhou v. Wu*, 2015 WL 925962 at *3 (S.D.N.Y. Mar. 3, 2015); *Tracy v. NVR, Inc.*, 667 F. Supp.2d 244, 247 (W.D.N.Y. 2009); *Gisomme v. Healthcorp*, 2014 WL 2041824 at *3-4 (E.D.N.Y. May 15, 2014); *Diaz v. Consortium for Worker Education Inc.*, 2010 WL 3910280 at *4 (S.D.N.Y. Sep. 28, 2010).

Thus, to the extent Plaintiffs seek to use Innovative's status as a Defendant, or as the future owner of Fresh to impute to it unlawful conduct that occurred over a year and a half prior to its acquisition of Fresh, such allegations are to be given no weight, and cannot support any of the claims asserted against Innovative in the Fifth Pleading.

### 3.    Joint Employer

Seeking to justify their group pleading under the joint employer doctrine, Plaintiffs allege that Late Night and Fresh (along with Duchman, Schlass, and Hussain) were their joint employers, and are therefore all liable for the alleged FLSA and NYLL violations. (Fifth Pleading, ¶¶ 62-91) There is no allegation, however, and certainly no facts, that plausibly state a claim against Innovative as a joint employer. This should end the inquiry with respect to Innovative on this theory of liability.

But even if the Court chooses to analyze the substance of the allegations further, it will be apparent that no joint employer allegations are made against Innovative. In order to be liable as a joint employer, Plaintiffs must plead sufficient *facts* as to each party defendant to which they

seek to impute liability that support the allegation that the factors set forth in *Zheng* will support a finding of joint control at the time of the alleged violation.  355 F.2d at 66, 76.[13]  It is insufficient to plead generalized or conclusory allegations that fall within the *Zheng* factors, as Plaintiffs have done here with respect to Fresh (again, Plaintiffs do not even make **conclusory** allegations of the *Zheng* factors with respect to Innovative at the time of the alleged violations). (Fifth Pleading ¶¶ 93-101 (setting forth conclusory, not factual, allegations that Innovative controlled Fresh while it was the sole shareholder and is therefore liable for Fresh's past liabilities, but containing no allegations that Innovative exercised control over Fresh prior to August 15, 2014))  *See Zhou*, 2015 WL 925962 at *3 (dismissing the action where plaintiff pleaded only conclusory allegations conforming to the *Zheng* factors without any facts that would support indicia of control at the time of the alleged violation); *Tracy*, 667 F. Supp.2d at 247 ("boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details – essentially 'a formulaic recitation of the elements of a cause of action' are insufficient to raise plaintiffs' right to relief 'above a speculative level'") (internal citations omitted).

## B.    Retaliation

Having established that there can be no liability on the part of Innovative for the first two claims – based on failure to pay overtime – we turn to the third claim for retaliation in violation

---

[13] The *Zheng* factors set forth the "economic reality" test, and include whether the workers work at the putative joint employer's premises and use its equipment; whether the workers perform services for both entities; whether the work is integral to the putative joint employer's business; whether the joint employer has responsibility for the workers' performance; whether the putative joint employer supervised the workers; and whether the workers worked exclusively or predominantly for the putative joint employer.  355 F.3d at 71-72.  None of these factors can be present here because Innovative was not on the scene until well after the employment relationship ended, and thus could not have engaged in any conduct giving rise to an employer relationship even under the economic realities test.  355 F.3d at 66.

14

of the FLSA. Just as in the wage and hour context, the Fifth Pleading asserts that the final act of retaliation occurred on March 15, 2013, a full 17 months before Innovative acquired Fresh. (Fifth Pleading ¶ 58)

In order to state a primary claim for retaliation, Plaintiff must allege that an employer took retaliatory action against him or her for engaging in a protected activity under the FLSA. 29 U.S.C. § 215(a)(3). Since it cannot be alleged that Innovative took any retaliatory action against any of the retaliation Plaintiffs, the Fifth Pleading fails to state a claim against Innovative on the third claim for relief. Moreover, for the same reasons set forth above, Innovative cannot be liable under the joint employer theory for conduct that occurred well prior to any *allegation* of wrongdoing. Accordingly, the Fifth Pleading has failed to state *any* claim against Innovative on any of the three causes of action claimed, and this action should be dismissed as against Innovative in its entirety, with prejudice, and without leave to amend.

## III.   INNOVATIVE WAS NOT A SUCCESSOR TO FRESH DIET NOR IS THERE ANY BASIS TO JUSTIFY A PIERCING OF THE CORPORATE VEIL

Apparently conceding the above – that there is no basis to impute direct liability to Innovative for acts it could not have possibly committed, or participated in committing – Plaintiffs raised, for the first time in opposition to Innovative's motion to dismiss the Third Amended Complaint, two arguments as to why Innovative should be liable for the alleged wage and hour violations complained of in the Fifth Pleading: Innovative is liable as a successor to Fresh, and Fresh's corporate veil should be pierced to impute its liability to Innovative. The Fifth Pleading, however, is bereft of any factual allegations that support either of these theories, and indeed, facts of which this Court can take judicial notice, even on a Rule 12(b)(6) motion to dismiss, demonstrate that both of these theories fail.

15

## A.    Innovative Is Not A Successor To Fresh

Plaintiffs' theory of successor liability is that "one entity [Fresh] may not escape liability simply by transforming into another [Innovative] and continuing functionally as the same business." (Memorandum of Law in Opposition to Innovative's Motion to Dismiss the Third Amended Complaint, dated August 4, 2016 (Docket No. 60) ("Opp. Br.") at 5)  While this statement appears to invoke the "mere continuation" theory of successor liability, this assertion also succinctly expresses why Innovative cannot be liable under the successor liability theory: Fresh Diet never transformed itself into another entity, nor attempted to circumvent any liability. It was simply acquired by new shareholders and continued to operate its business as before.

The only nexus Plaintiffs allege between Innovative and their claims is that Innovative became a corporate owner (after the alleged FLSA and NYLL violations took place) of Fresh from August 2014 through February 2015. (Fifth Pleading, ¶¶ 30, 93-94, 101, 104)  The law is clear, however, that an owner who did not have "operational control" over the company, and "personal responsibility for making decisions about the conduct of the business *that contributed to the violations of the [FLSA]*" at the time of the violations themselves, cannot have any FLSA liability on the basis of such ownership. *See Irizarry. v. Catsimatidis*, 722 F.3d 99, 108 (2d Cir. 2013) (emphasis added). *See also Bautista v. Beyond Thai Kitchen, Inc.*, 2015 WL 5459737 at *5 (S.D.N.Y. Sep. 17, 2015) (declining to impose liability on an "owner" who incorporated, but does not control or operate, the continuing business).

Thus, the only way that Innovative could have any liability for acts committed by Fresh when it was owned by its previous shareholders is if Innovative's acquisition of Fresh fell into one of the four recognized exceptions to the rule that a corporation that acquires the assets of another does not assume the previous corporation's liabilities. *See EEOC v. Nichols Gas & Oil,*

*Inc.*, 518 F. Supp.2d 505, 510 (W.D.N.Y. 2007), citing *Graham v. James*, 144 F.3d 229, 240 (2d Cir. 1998).

Successor liability does not attach where there is no successor. It also requires a showing either (1) that the purchaser expressly assumed the liabilities of the seller; (2) that there was a consolidation or merger of the purchaser or seller; (3) that the purchasing corporation is a "mere continuation" of the seller; or (4) that the transaction was entered into fraudulently to escape the seller's obligations. *New York v. National Service Industries, Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). *See Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245, 451 N.E.2d 195, 198, 464 N.Y.S.2d 437, 440 (1983). Here, Fresh continued its operations exactly as it had before, albeit with a new shareholder, Innovative, that now owned all of its stock. This factual scenario does not support successor liability under any of the exceptions set forth above.

The same result obtains under Florida law.[14] *See Bernard v. Kee Manufacturing Co.*, 409 So.2d 1047, 1049 (Fla. 1982) (declining to extend successor liability beyond the traditional four common law exceptions); *Corporate Express Office Products, Inc. v. Phillips*, 847 So.2d 406, 412 (Fla. 2003). There is thus no difference between the law of New York and the law of Florida, and there is no need to engage in a conflict of law analysis. *Hayden Capital USA, LLC v. Northstar Agri Industries*, 2012 WL 1449257 at *4 (S.D.N.Y. Apr. 22, 2012) (under New York's choice of law rules, the court first determines if there is a conflict; if there is none, there is no need to choose between the law of the two applicable jurisdictions). The same result

---

[14] Where federal jurisdiction is based on diversity, the Courts will look to the choice of law rules of the forum state. Under New York law, the general rule is that the law of the state of incorporation determines questions of successor liability and corporate veil piercing. *Tommy Lee Handbags Manufacturing Ltd. v. 1948 Corp.*, 971 F. Supp.2d 368, 375 (S.D.N.Y. 2013) (Carter, J.). Both Innovative and Fresh are Florida corporations. (Fifth Pleading ¶¶ 16, 30) In cases arising from a federal question, federal common law applies. *EEOC v. Nichols*, 518 F. Supp.2d at 510. In any event, federal common law is substantially the same as New York and Florida law. (*Id.*)

pertains under federal common law. *See EEOC v. Nichols*, 518 F. Supp.2d at 510; *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F. Supp.2d 630, 635-36 (S.D.N.Y. 1995) (citing the common law rule, subject to the four exceptions of an express or implied assumption of liability; fraudulent transaction; de facto consolidation or merger; or mere continuation).

The Fifth Pleading fails to allege facts that support any of the four exceptions to the common law rule against successor liability. There are no allegations that Innovative expressly or impliedly assumed the liabilities of Fresh.[15] There are no allegations that Innovative's acquisition of Fresh was a fraudulent transaction to escape Fresh's obligations.[16] Indeed, the Fifth Pleading alleges on its face that Innovative's acquisition of Fresh's stock was fully disclosed (Fifth Pleading ¶¶ 93-94),[17] and that Innovative, indeed, funded Fresh's operations by means of cash loans. (Fifth Pleading ¶ 98)[18]

---

[15] In fact, the publicly filed merger agreement expressly provides that Innovative did ***not*** assume the liabilities of Fresh. (Sack Decl., Ex. D)

[16] With the exception of a conclusory allegation in paragraph 101, which alleges the legal conclusion that Innovative was responsible for ***making sure*** Fresh's former employees were paid, the Fifth Pleading is bereft of a single factual allegation to support an argument that the transaction was designed to allow Fresh to fraudulently disavow its legal obligations. If anything, Plaintiffs make that allegation with respect to New Fresh's acquisition of Fresh (Fifth Pleading ¶ 105), but that allegation, too, cannot support successor liability since it is conceded that New Fresh continued to operate Fresh from February through July 2016. (Fifth Pleading ¶¶ 104, 106) We are not aware of a legal concept of "making sure." Either Plaintiffs can plead facts that support successor liability, or they can't. After five attempts, they have not.

[17] The transaction was also publicly disclosed in Innovative's filings with the SEC, of which the Court can take judicial notice. (Sack Decl., Exs. C and D)

[18] The allegation in paragraph 98 of the Fifth Pleading is false. Innovative loaned in excess of $7 million to Fresh, which transactions were publicly disclosed in Innovative's filings. (Sack Decl., Ex. E) Although the Court cannot decide this factual discrepancy on a Rule 12(b)(6) motion to dismiss, it need not do so to reach the conclusion that Innovative's acquisition of Fresh was not fraudulent.

The Fifth Pleading *hints* at the possibility that Innovative's acquisition of Fresh was a merger (Fifth Pleading ¶ 94), but ultimately pleads facts that, if true, lead to the exact opposite conclusion. (*Id.* (pleading that Fresh was a wholly-owned subsidiary of Innovative, subject to oversight of Innovative's officers and board) (*see* n.6, *supra*); Fifth Pleading ¶ 99 (alleging that Innovative controlled the operations of Fresh, implicitly conceding that Fresh operated as its own entity during the period of Innovative's ownership); *also see* Sack Decl., Ex. C.)

Finally, the Fifth Pleading concedes that Innovative was not a "mere successor" of Fresh, as it alleges that, at all times, Fresh continued to operate the business of Fresh (albeit under Innovative's alleged "control" or "oversight"). (Fifth Pleading ¶¶ 94, 99-101)[19]

At bottom, Plaintiffs allege no facts, and have cited no authority (in their Opp. Br.) for the proposition that where a corporate business continues to operate, each of its succeeding shareholders may be liable for its pre-existing obligations. Indeed, such a rule would be contrary to one of the foundational principles of corporate law – a corporate shareholder is not liable for the corporation's obligations. Even under the FLSA, there is no shareholder liability for any entity which, like Innovative, was not an owner at the time of the alleged wrongdoing.

Plaintiffs' argument that Innovative can be liable under a successor liability theory thus fails as a matter of law, and cannot prevent the dismissal of the Fifth Pleading in its entirety as against Innovative

---

[19] Moreover, unlike an asset purchase, the "substantial continuity" test has no application where, as here, the underlying transaction was a stock purchase. Because Innovative acquired Fresh by virtue of a stock purchase; the corporate shareholder changed, but the business continued to operate as before, and there was no successor as a matter of law. *See Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2005 WL 22833 at *79 (S.D.N.Y. Jan. 5, 2005). According to the express language in *Rowe*, the "substantial continuity" test is applicable to an asset purchase agreement, not a stock purchase agreement. *Id.*

### B.   Innovative Cannot Be Liable Under A Veil Piercing Theory

Neither the Fifth Pleading nor any previous iterations of the Complaint alleges that

Innovative is liable for Plaintiffs' claims because Fresh's corporate veil should be pierced.  This

argument is made for the first time in the Opp. Br. (at 7-9), and consists solely of the conclusory

argument that "Innovative used various corporate transactions with Fresh Diet to avoid

judgment." (Opp. Br. at 9)  Not surprisingly, Plaintiffs did not cite any authority for the

proposition that Innovative could be held liable for acts committed by Fresh before it owned

Fresh under the veil piercing theory, since no such authority exists.  Instead, Plaintiffs invited the

Court to ignore the law, and invent new standards applicable to FLSA cases only, disregarding

the principles of corporate law.[20]  The Court should decline this invitation.

Florida law (Innovative's state of incorporation, *see Tommy Lee Handbags*, 971 F.

Supp.2d at 375) makes it crystal clear that in order to pierce the corporate veil, not only must a

plaintiff allege and prove that the corporation is dominated and controlled by its owner so as to

support that it is an alter ego or mere instrumentality, but also that the corporation was used to

mislead its creditors or perpetuate a fraud against them.  *Dania Jai-Alai Palace, Inc. v. Sykes*,

450 So.2d  1114, 1119 (Fla. 1984).[21]

---

[20] *See* Opp. Br. at 4 ("It stands to reason, then, that this Court can use the FLSA's 'economic realities' test *in lieu of state law* when determining whether liability extends to a *subsequent purchaser*") (emphasis added).

In another jaw-dropping statement, issued *ex cathedra* and without citation to authority, Plaintiffs declare that "Given that Innovative was responsible for Fresh's liabilities at the time this action was filed, Innovative is a proper Defendant and a necessary part to this action." (Opp. Br. at 4)  This argument puts the cart before the horse.  As set forth in section III(A) above, Innovative was *not* responsible for Fresh's liabilities, even when it owned 100% of Fresh's stock.  *See EEOC v. Nichols*, 518 F. Supp.2d at 510.

[21] "It isn't sufficient merely to show that the corporation exists and that there are a limited number of stockholders doing business in good faith through the corporate entity. . . . The corporate veil will not be penetrated either at law or equity unless it is shown that the corporation

The Fifth Pleading alleges no fact that could support veil piercing under Florida law.

*Seminole Boatyard, Inc. v. Christoph,* 715 So. 2d 987, 990 (Fla. 4th DCA 1998) (Florida courts

"impose[ ] a strict standard upon those wishing to pierce the corporate veil"); *Old W. Annuity &*

*Life Ins. Co. v. Apollo Grp.*, 2008 WL 2993958 at *7 (M.D. Fla. Aug. 1, 2008), *aff'd,* 605 F.3d

856 (11th Cir. 2010) ("Florida courts disregard the corporate entity in only the **most**

**extraordinary** cases") (internal citation omitted) (emphasis added).  Under Florida law, "a

corporation is a separate legal entity, distinct from the persons comprising [it]" *Gasparini v.*

*Pordomingo,* 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008), and "the corporate veil may be pierced

if the plaintiff can prove both [1] that the corporation is a mere instrumentality or alter ego of

the defendant, and [2] that the defendant engaged in improper conduct in the formation or

use of the corporation." *XL Vision, LLC v. Holloway,* 856 So. 2d 1063, 1066 (Fla. 5th DCA

2003).  *See Seminole Boatyard*, 715 So. 2d at 990 ("[T]he corporate veil will not be pierced

absent a showing of improper conduct").  In addition, and most significantly, "(3) the

fraudulent or improper use of the corporate form [must have] caused injury to the claimant."

*Gasparini,* 972 So. 2d at 1055; *Dania Jai-Alai Palace,* 450 So. 2d at 1117. [22]

---

was organized or employed to mislead creditors or to work a fraud upon them." 450 So.2d at
1120. "The rule is that the corporate veil will not be pierced, either at law or in equity, unless it
be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud
upon them . . . In the absence of pleading and proof that the corporation was organized for an
illegal purpose or that its members fraudulently used the corporation as a means of evading
liability with respect to a transaction that was, in truth, personal and not corporate, [plaintiff]
cannot be heard to question the corporate existence but must confine efforts to the remedies
provided by law for satisfying his judgment *from the assets of the corporation*, if any can be
found (Citations omitted, emphasis in the original)." 450 So.2d at 1119-20, citing *Riley v. Fatt*,
47 So.2d 769 (Fla. 1950).

[22] The same result is reached under New York law.  *Battino v. Corrella Fifth Avenue
LLC*, 861 F. Supp.2d 392, 409-410 (S.D.N.Y. 2012) ("New York establishes two requirements
for piercing the corporate veil . . . (1) the owner exercised complete domination over the
corporation with respect to the transaction at issue, and (2) such domination was used to commit
a fraud or wrong that injured the party seeking to pierce the corporate veil").  *Hangzhou Kailai*

Even if the Court were to credit Plaintiffs' factual allegations that Innovative exercised complete control over Fresh (Fifth Pleading ¶¶ 94, 99, 101),[23] Plaintiffs' theory of veil piercing fails because they have not, and cannot allege facts to support a claim that Innovative used Fresh's corporate form to perpetrate a fraud on them, since the alleged wrongs committed by Fresh occurred well prior to Innovative's acquisition of its stock.  (Fifth Pleading ¶¶ 34-43, and 93)  There could therefore have been no reliance, by Plaintiffs or anyone else, on any alleged abuse of the corporate form by Innovative to defraud them as alleged former employees of Fresh.

To the extent Plaintiffs claim, again without any factual basis, that the financial relationship between Innovative and Fresh was used to defraud them *after* the alleged FLSA and NYLL violations occurred, these transactions between Fresh and Innovative were a matter of public record, and reflected in Innovative's public filings with the SEC, including the massive cash loans advanced by Innovative to Fresh and the fact that such loans were keeping Fresh afloat.  *See* Sack Decl., Ex. E at p. 30 (disclosing the loans made by Innovative to Fresh Diet and the expenses of Fresh Diet paid by Innovative, all totaling in excess of $7 million).  *Cf.* Fifth Pleading ¶ 98.

---

*Neckwear Apparel Co. v. NCP Direct Sourcing, Inc.*, 15 cv 1441, NYLJ 1202765621495 at *6-*7 (S.D.N.Y. Aug. 17, 2016) (complaint dismissed without leave to amend when it failed to allege that the individual defendants conducted their business in disregard of corporate formalities, and failed to state factual allegations to demonstrate that the corporate form was abused to defraud a corporate creditor).  No fraud or wrong is alleged in this Fifth Pleading, nor can any such conduct be alleged for the reasons set forth above.

[23] Despite that this is a pre-answer motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court need not credit these particular allegations, as they are flatly contradicted by documents cited by Plaintiffs' counsel and of which the Court may take judicial notice – Innovative's public filings with the SEC and with the Florida Secretary of State, indicating that the "core" management of Innovative was different from that of Fresh.  (Sack Decl., Exs. D and F)

Innovative's financial relationship with Fresh was thus at all times well-known, publicly disclosed, and could not possibly have been used to mislead or defraud creditors, including Plaintiffs (who are not creditors of Innovative, and have never entered into any transaction with the company).[24]

Because Plaintiffs have not pled, and cannot plead facts that give rise to liability on the part of Innovative under the continuing liability theory, and because Plaintiffs have not pled, and as a matter of law cannot plead facts that would support piercing the corporate veil to impute Fresh's liabilities to Innovative, this Fifth Pleading must be dismissed in its entirety as against Innovative, and with prejudice.

## IV.   DISMISSAL SHOULD BE WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD

The Fifth Pleading is but the latest in an apparent never-ending saga, which will be allowed to continue *ad infinitum* if the Court does not put a stop to it. As demonstrated herein, Plaintiffs, faced with the impossibility of pleading facts to support plausible claims against Defendants generally and Innovative in particular, have resorted to simply making up facts[25] to push them beyond the pleading stage, in the vain hope that they will use the leverage of the

---

[24] Plaintiffs' allegation that Innovative sold Fresh to New Fresh to avoid judgment in Hernandez I is unfounded, and irrelevant to Plaintiffs' veil piercing argument. First, Innovative was not a party in Hernandez I, or subject to any judgment arising therefrom. Second, even if Plaintiffs could show that Innovative defrauded the plaintiffs in Hernandez I, it does not follow that the Plaintiffs herein were independently defrauded by Innovative's alleged utilization of the Fresh corporate form to support veil piercing under Florida or New York law.

[25] Plaintiffs' allegations that Innovative and Fresh were part of "a single business enterprise and are owned, controlled, and/or managed by the same core group of individuals" and "for all intents and purposes, The Fresh Diet was a department within Innovative" (Fifth Pleading ¶¶ 32-33), is made of whole cloth. By relying on Innovative's public filings, Plaintiffs' counsel has conceded that the individuals described therein comprising the control group of Innovative are not "the same core group of individuals" who controlled Fresh. (*See also*, Fifth Pleading ¶ 96 (regarding Duchman's loss of control of Fresh); Sack Decl., Ex. F (setting forth the executive officers of Fresh).)

burden and expense of litigation to extract some sort of settlement from Innovative – the last viable deep pocket among the Defendants, and the Defendant which least belongs in this case.

Enough is enough. Innovative has demonstrated that it could not possibly have been an employer or joint employer of Plaintiffs, and, when it acquired Fresh some 17 months later, did not assume Fresh's liabilities. These conclusions can be decided on the face of the pleadings and as a matter of law. Any further attempt to add new allegations would be futile, and thus supports a dismissal with prejudice and without leave to amend. *See Loreley Financing (Jersey) No. 3 v. Wells Fargo Securities*, 797 F.3d 160, 190 (2d Cir. 2015) (grounds to deny leave to amend include bad faith, dilatory conduct, undue delay, and futility); *Lopez v. Ctpartners Executive Search, Inc.*, 173 F. Supp.3d 12, 44 (S.D.N.Y. 2016); *Garcia*, 15-cv-0063 (E.D.N.Y.), ECF Docket No. 57 at *2. Just because Plaintiffs and their counsel are willing to make up new allegations to attempt to correct their repeated pleading deficiencies does not mean that Innovative should have to continue to incur the costs of defending these frivolous allegations, or that the Court should countenance this practice. Accordingly, the dismissal of the Fifth Pleading should be the final dismissal in this action.

**Conclusion**

For the reasons stated herein, and based on all prior pleadings and filings in this action, Innovative respectfully requests that the Court dismiss the Fourth Amended Complaint in its entirety, or in the alternative, that the Court dismiss the Fourth Amended Complaint in its entirety as against Innovative; that such dismissal be with prejudice and without leave to amend; and that the Court grant Innovative such other and further relief as the Court deems just and proper, including its costs and reasonable attorneys' fees incurred in connection with defending this iteration of the Complaint.

Dated: New York, New York
       March 10, 2017

                             Respectfully submitted,

                             FEDER KASZOVITZ LLP

By: _____
          Howard I. Rhine (HR-1961)
          David Sack (DS-6532)
      845 Third Avenue
      New York, New York 10022
      Telephone: (212) 888-8200

      Attorneys for Defendant
      Innovative Food Holdings, Inc.

# APPENDIX A

davids

# davids

**Appendix A 3 10 17.pdf**
03/10/17   14:44



## APPENDIX A

| Complaint | First Amended Complaint | Second Amended Complaint | Third Amended Complaint | Fourth Amended Complaint |
|---|---|---|---|---|
| ¶ 29. Plaintiffs often worked in excess of forty (40) hours a week, yet the Defendants willfully failed to pay them overtime compensation of one and one-half times their regular hourly rate, in violation of the FLSA and the NYLL and pertinent regulations promulgated thereunder. | ¶ 30. Plaintiffs often worked in excess of forty (40) hours a week, yet Defendants willfully failed to pay them overtime compensation of one and one-half times their regular hourly rate, in violation of the FLSA and the NYLL and pertinent regulations promulgated thereunder. | ¶ 35. Plaintiffs often worked in excess of forty (40) hours a week, yet Defendants willfully failed to pay them overtime compensation of one and one-half times their regular hourly rate, in violation of the FLSA and the NYLL and pertinent regulations promulgated thereunder. | ¶ 36. Plaintiffs often worked in excess of forty (40) hours a week, yet Defendants willfully failed to pay them overtime compensation of one and one-half times their regular hourly rate, in violation of the FLSA and the NYLL and pertinent regulations promulgated thereunder. | ¶ 35. Plaintiff Hernandez was employed by Defendants from May 7, 2010, to July 5, 2012, and worked approximately seven hundred and ninety-one (791) days for Defendants. During this time, Hernandez worked in excess of forty (40) hours each week. |
| ¶ 50. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation to their New York City tri-state metropolitan area food delivery employees for their hours worked in excess of forty (40) hours per workweek. | ¶ 56. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their New York City tri-state metropolitan area food delivery employees for their hours worked in excess of forty (40) hours per workweek. | ¶ 85. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their New York City tri-state metropolitan area food delivery employees for their hours worked in excess of forty (40) hours per workweek. | ¶ 101. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their New York City tri-state metropolitan area food delivery employees for their hours worked in excess of forty (40) hours per workweek. | ¶ 36. Plaintiff Guzman was employed by Defendants from January 29, 2012, to June 28, 2012, and worked approximately one hundred and fifty-two (152) days for Defendants. During this time, Guzman worked in excess of forty (40) hours each week. |

| | | | | |
|---|---|---|---|---|
| ¶ 51. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation to their New York City tri-state metropolitan area food delivery employees for their hours worked in excess of forty (40) hours per workweek. | ¶ 57. As a result of Defendants' willful failure to compensate its New York City tri-state metropolitan area food delivery employees, including Wage and Hour Plaintiffs, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(I) and 215(a). | ¶ 86. As a result of Defendants' willful failure to compensate its New York City tristate metropolitan area food delivery employees, including Wage and Hour Plaintiffs, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(I) and 215(a). | ¶ 102. As a result of Defendants' willful failure to compensate its New York City tristate metropolitan area food delivery employees, including Wage and Hour Plaintiffs, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(I) and 215(a). | ¶ 37. Plaintiff Rose was employed by Defendants from July 23, 2010, to July 28, 2011, and worked approximately one hundred and sixty-five (165) days for Defendants. During this time, Rose worked in excess of forty (40) hours each week. |
| ¶52. As a result of the Defendants' willful failure to compensate its New York City tristate metropolitan area food delivery employees, including Wage and Hour Plaintiffs, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, the Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(I) and 215(a). | ¶ 63. Defendants willfully violated Wage and Hour Plaintiffs rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its applicable regulations. | ¶ 92. Defendants willfully violated Wage and Hour Plaintiffs rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its applicable regulations. | ¶ 108. Defendants willfully violated Wage and Hour Plaintiffs rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its applicable regulations. | ¶ 38. Plaintiff Collado was employed by Defendants from December 24, 2010, to July 6, 2011, and worked approximately one hundred and sixty (160) days for Defendants. During this time, Collado worked in excess of forty (40) hours each week. |

| | | | |
|---|---|---|---|
| ¶ **58.** The Defendants willfully violated Wage and Hour Plaintiffs rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its applicable regulations. | | | ¶ **39.** Plaintiff Salas was employed by Defendants from April 2, 2010, to March 16, 2011, and worked approximately four hundred and seventy (470) days for Defendants. During this time, Salas worked in excess of forty (40) hours each week. In fact, he believes that he worked in excess of sixty (60) hours each week he worked for Defendants. |
| | | | ¶ **40.** Plaintiff Konate was employed by Defendants from July 9, 2010, to August 4, 2010, and worked approximately two hundred and fifty-one (251) days for Defendants. During this time, Konate worked in excess of forty (40) hours each week. |
| | | | ¶ **41.** Plaintiff Rodriguez was employed by Defendants from June 18, 2010, to July 21, 2010, and worked approximately thirty-three (33) days for Defendants. During this time, Rodriguez worked in excess of forty (40) hours each week. |

X:\HR\Food Innovations\Fresh Litig-HERNANDEZ II\Appendix A 3.10.17.docx

| | | |
|---|---|---|
| ¶ 42.  Plaintiff Dardaine was employed by Defendants from approximately early 2011 to early 2013 and worked approximately five hundred and two (502) days for Defendants. During this time, Dardaine worked in excess of forty (40) hours each week. | | |
| ¶ 43.  Plaintiff Correa was employed by Defendants from January 4, 2011, to March 14, 2013, and worked approximately five hundred and forty-two (542) days for Defendants. During this time, Correa worked in excess of forty (40) hours each week. | | |
| ¶ 46.  Plaintiffs often worked in excess of forty (40) hours a week, yet the Fresh Diet Defendants willfully failed to pay them overtime compensation of one and one-half (1.5) times their regular hourly rate, in violation of the FLSA and the NYLL and pertinent regulations promulgated thereunder. | | |

| | | |
|---|---|---|
| ¶119. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their New York City tri-state metropolitan area food delivery employees for their hours worked in excess of forty (40) hours per workweek. | ¶120.  As a result of Defendants' willful failure to compensate its New York City tristate metropolitan area food delivery employees, including Wage and Hour Plaintiffs, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a). | ¶126. Defendants willfully violated Wage and Hour Plaintiffs rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its |
| | | |
| | | |
| | | |