UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
:
FERNANDO HERNANDEZ, JUANY :
GUZMAN, BRANDON ROSE, IRVING : Case No.: 15-CV-1338 (ALC) (JLC)
COLLADO, ANDRES SALAS, BENGALY :
KONATE, MICHAEL J. RODEIGUEZ, :
WILTON A. DARDAINE, and JUAN :
CORREA, :
:
                Plaintiffs, :
:
          -- against -- :
:
THE FRESH DIET, INC., LATE NIGHT :
EXPRESS COURIER SERVICES, INC. :
(FL), FRESH DIET EXPRESS CORP. :
(NY), THE FRESH DIET – NY INC. (NY), :
FRESH DIET GRAB & GO, INC. (FL) :
a/k/a YS CATERING HOLDINGS, INC. :
(FL) d/b/a YS CATERING, INC. (FL), :
INNOVATIVE FOOD HOLDINGS, INC. :
(FL), FRESH DIET EXPRESS CORP. (FL),:
NEW FRESH CO., LLC (FL), :
SYED HUSSAIN, Individually, JUDAH :
SCHLOSS, Individually, and SCHER :
ZALMAN DUCHMAN, Individually, :
:
                Defendants. :
----------------------------------------------------------x

### DEFENDANT INNOVATIVE FOOD HOLDINGS, INC.'S
### REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
### PLAINTIFFS' FOURTH AMENDED COMPLAINT: THEIR FIFTH PLEADING

FEDER KASZOVITZ LLP
845 Third Avenue
New York, New York 10022
Telephone: (212) 888-8200

Attorneys for Defendant
Innovative Food Holdings, Inc.

Of Counsel:
Howard I. Rhine
David Sack

Defendant Innovative Food Holdings, Inc. ("Innovative"), by its undersigned attorneys, respectfully submits this memorandum of law in reply to Plaintiffs' Memorandum of Law in Opposition to Innovative's motion to dismiss the Fourth Amended Complaint (the "Fifth Pleading") pursuant to Fed. R. Civ. P. 12(b) (ECF Docket No. 120, the "Pl. Mem.").

## I. PLAINTIFFS FAIL TO STATE A WAGE AND HOUR CLAIM AGAINST ANY DEFENDANT, AND THE FIFTH PLEADING SHOULD BE DISMISSED ON THAT BASIS, AND IN ITS ENTIRETY FOR WANT OF SERVICE

Plaintiffs state (Pl. Mem. at 5) "This Opposition assumes that Plaintiffs have stated a claim against Fresh Diet." This assumption is without basis. As Innovative's moving memorandum (ECF Docket No. 115) makes clear, the factual allegations in the Fifth Pleading do not state an FLSA claim against anyone because the Fifth Pleading fails to conform to the requirements for pleading facts set forth by the Second Circuit in *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013); *DeJesus v. HF Management Services, LLC*, 726 F.3d 85, 90 (2d Cir. 2013); and *Nakahata v. New York Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013). As such, the Fifth Pleading must be dismissed on its face pursuant to Fed. R. Civ. P. 12(b)(6) both as against Innovative and as against all the other Defendants. Plaintiffs do not challenge the relevant factual pleading standard or attempt to demonstrate that it was met after four attempts. Rather, they simply "assume" they have stated a claim.[1] Not having offering any opposition to Innovative's argument that the Fifth Pleading fails

---

[1] To the extent that Plaintiffs' "assumption" is an implicit argument that Innovative cannot raise the pleading deficiencies as they relate to other Defendants, such argument is misplaced. Since Innovative's alleged liability is solely derivative of the alleged liability of the other Defendants, it has standing to raise this argument as to why the Fifth Pleading fails to properly allege any underlying violation and must therefore be dismissed in its entirety.

to state a wage and hour claim against anyone, Plaintiffs have conceded it, and the Court should dismiss the FLSA claims against all Defendants for this reason alone.[2]

Moreover, it is apparent that Plaintiffs failed to serve the Fifth Pleading on any Defendant other than Innovative, despite their express representation to the Court that they would do so no later than February 7, 2107. (*See* ECF Docket Nos. 110 (scheduling order on consent); 116 (letter from Defendant Schlass stating that the individual Defendants were not served, despite the Court's scheduling order (Docket No. 110)); and 117 (letter from Plaintiffs' counsel conceding that Fresh Diet (or New Fresh) and the individual Defendants were not served, despite the clear Order from the Court (Docket No. 110) requiring such service.)) This conceded lack of service, despite a clear Order requiring it, and failure to seek leave to make late service requires dismissal of the Fifth Pleading as a whole against all Defendants (Innovative for the substantive reasons set forth herein and below, and the remaining Defendants for lack of service).

## II.     INNOVATIVE IS NOT LIABLE AS A SUCCESSOR TO FRESH DIET

### A.     The Substantial Continuity Test Does Not Apply To A Stock Transaction

Plaintiffs concede that under the common law and New York tests for successor liability – the "mere continuation test" – their pleading fails. (Pl. Mem. at 7)[3] Plaintiffs therefore ask the

---

[2] Plaintiffs' reference to the "elephant in the room" – their successful survival of summary judgment in *Hernandez I* (Pl. Mem. at 1-2) – is inapposite. *Hernandez I* involved different pleadings and different FLSA plaintiffs, and as such, the pleadings in that action have no bearing on the adequacy or sufficiency of the Fifth Pleading. Moreover, the defendants in *Hernandez I* never moved for dismissal on the pleadings, nor could they have under the standards set forth by the Second Circuit in *Lundy*, *DeJesus*, and *Nakahata*, those cases having been decided *after* the complaint in *Hernandez I* was filed.

[3] Plaintiffs argue, contrary to the authority cited by Innovative (Docket No. 115 at page 17, n. 14), that Florida's law ought to apply to successor liability. However, Florida law concerning successor liability is substantially the same as the common law and the law of New York, so the outcome would be the same regardless of which law is applied. *See Bernard v. Kee Manufacturing Co.*, 409 So.2d 1047, 1049 (Fla. 1982); *Corporate Express Office Products, Inc. v. Phillips*, 847 So.2d 406, 412 (Fla. 2003).

2

Court to adopt what they characterize as the "federal standard" of "substantial continuity," even though they concede (Pl. Mem. at 7), as do the cases upon which they rely, that the Second Circuit has *not* adopted that standard. *Bautista v. Beyond Thai Kitchen, Inc.*, 2015 WL 5459737 at *3 (S.D.N.Y. Sep. 17, 2015) ("The Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context").

Aside from asking this Court to adopt a new standard, Plaintiffs' authority is inapposite because the cases they cite do not apply the concept of substantial continuity to a defendant that acquired an operating company by means of the purchase of the stock of that company. Rather, the district courts that imposed successor liability under the substantial continuity test imposed it on defendants that acquired the *assets* of an operating company, and continued to operate it. *See Bautista*, 2015 WL 5459737 at *2 (defendant, the operating corporate entity, came into existence as a result of an *asset purchase* of the assets of its predecessor business) (emphasis added); *Battino v. Cornelia Fifth Avenue, LLC*, 861 F. Supp.2d 392, 396 (S.D.N.Y. 2012) (defendant was formed when owners, through an *asset purchase agreement*, purchased the "inventory, equipment, certain contracts related to the business contracts, accounts receivable, and goodwill" of the predecessor business) (emphasis added); *Chen v. New 9th Avenue Pearl on the Sushi, Inc.*, 2015 WL 3947560 at *1 (S.D.N.Y. Jun. 29, 2015) (successor liability found against purchaser in an *asset purchase* where the purchaser operated the business) (emphasis added). *See also, Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2005 WL 22833 at *79 (S.D.N.Y. Jan. 5, 2005) (the "substantial continuity" test is applicable to an *asset purchase* agreement, not a stock purchase agreement).[4]

---

[4] Plaintiffs' argument (Pl. Mem. at 8) that reliance upon *Rowe* is misplaced is not well-taken because, as shown below, the law of the Eleventh Circuit is substantially the same as that

3

Such is not the case here. Innovative did not purchase the *assets* of Fresh Diet and manage its continuing operations. Rather, Innovative purchased Fresh Diet's *stock*, while Fresh Diet continued its previous operations under management that was separate from and independent of Innovative. (Declaration of David Sack, executed March 10, 2017 (ECF Docket No. 114), Ex. D (*also* Declaration of Walker Harman, Esq., dated May 24, 2016, Ex. B) (attaching the same document).) Thus, like the individual defendant in *Bautista*, this Court cannot find that Innovative is liable as a successor to Fresh Diet (which continued to operate before, during, and after Innovative's tenure as owner) under the "substantial continuity" test.

Plaintiffs' reliance upon authority from other jurisdictions (the Ninth Circuit) should be rejected by this Court, and moreover does not establish successor liability under the facts present here. In *Steinbach v. Hubbard*, 51 F.3d 843, 846-47 (9th Cir. 1995), the court found that there was no successor liability where the acquiring company merely leased the operating company's assets temporarily. After the term of the lease expired, the assets (not the stock) reverted back to the operating company. *Steinbach* provides no authority with regard to a stock transaction, as here. Similarly, *Flores v. Velocity Express*, No. 12-cv-5790 (N.D. Cal. Apr. 16, 2015), involved a parent company acquiring an operating company, merging it into its own operating entity, and discontinuing the form of the acquired company while continuing its business. Here, Innovative acquired Fresh Diet, but did not merge it into Innovative's operations, and did not continue to operate the business of Fresh Diet. Plaintiffs do not and cannot allege facts that would give rise to liability even if this Court were to adopt the reasoning of the Northern District of California in *Flores*.

---

of the Second Circuit, such that Plaintiffs' attempt to use *National Airlines*, *infra*, to distinguish *Rowe* is inapposite.

Finally, Plaintiffs are incorrect in stating that the Eleventh Circuit has held that the "substantial continuity" test applies to FLSA claims. (Pl. Mem. at 7-8) In fact, *Glausier v. A+ Nursetemps, Inc.*, 2015 WL 2020332 at *5 (M.D. Fla. May 1, 2015), the case that Plaintiffs rely on for this proposition, expressly states: "***With specific reference to the FLSA, the Eleventh Circuit has not decided whether the federal standard of successorship liability should be applied in FLSA cases,***" and then cites other district court authority for that proposition. (Emphasis added).[5] Thus, the state of the law in the Eleventh Circuit is the same as in the Second Circuit, with the substantial continuity test being applied only by select district courts, and only to cases involving asset purchase, as opposed to Innovative's' stock purchase. (*Glausier* involved new ownership with direct management control, and *Cuervo v. Airport Services, Inc.*, 984 F. Supp.2d 1333 (S.D. Fla. 2013), cited by *Glausier*, involved an *asset purchase* in the context of a bankruptcy) (emphasis added).

Plaintiffs are therefore asking this Court to go where no other court in this jurisdiction has gone, and apply the substantial continuity test in the context of a stock purchase where the original operating company continues to conduct business in its own name as an independent entity. The Court should decline this invitation to expand the theory of successor liability to include (i) a stock purchase; (ii) by a company that had nothing to do with the alleged violations; (iii) that did not receive any of the assets; (iv) that did not operate the acquired company; (v) which continued to operate under its own name and management; (vi) and was subsequently sold to another entity, and continued to operate independently even after such sale.

---

[5] *In re National Airlines, Inc.*, 700 F.2d 695 (11th Cir. 1983), cited by *Glausier*, and relied upon by Plaintiffs, is a Title VII case, not an FLSA case.

### B. Innovative Is Not Liable Under The Substantial Continuity Test

Even were the Court to apply the substantial continuity test, *Bautista*, and the cases cited therein, make clear that "[c]ourts have found majority or sole shareholders liable [under the FLSA] have not relied solely on shareholder status, but have looked also to the degree of operational control a shareholder exerts over the corporation's functions." *Bautista*, 2015 WL 5459737 at *5 (brackets in original) (citing *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp.2d 253, 311 (S.D.N.Y. 2011) (collecting cases). Thus, in *Bautista*, the court applied the nine factor substantial continuity test and found that the shareholder of the new corporation was not personally liable merely because her *company* bought a restaurant that was a successor to the restaurant that committed the FLSA violations. The court found that only the operating corporation, and not the owner, was liable as a successor. *Bautista*, 2015 WL 5459737 at *5.[6]

Applying this principle here, it is clear that Plaintiffs' conclusory allegations that Innovative "controlled all aspects" of Fresh Diet after it acquired the company (Fifth Pleading ¶ 99) are insufficient to overcome the documentary evidence[7] – *relied upon by Plaintiffs themselves* – that establishes that Fresh Diet operated independently before it was acquired by Innovative; continued its operations as an *independent subsidiary* while it was owned by Innovative; and continued its independent operations after Innovative sold it. Moreover, even

---

[6] This principle is consistent with the Second Circuit's holding in *Irizarry v. Catsimatidis*, 722 F.3d 99, 108 (2d Cir. 2013), which looks to the *activities* of the alleged owner, and not its status, to determine liability.

[7] Plaintiffs' argument that the Court should disregard Innovative's SEC filings on a Rule 12(b)(6) motion to dismiss (Pl. Mem. at 5) is not well taken, given that the Fifth Pleading alleges facts obtained directly from such filings so as to render them incorporated by reference (Fifth Pleading ¶¶ 93-94, 98, 102-104). Plaintiffs' counsel has similarly relied on these very same documents in his May 24, 2016 Declaration to this Court. Plaintiffs continue to rely on these filings to make their arguments as to why the Fifth Pleading should be sustained. (Pl. Mem. at 3) As such, these filings were certainly incorporated by reference by Plaintiffs multiple times, and the Court can refer to their content on this motion.

6

while owned by Innovative, Fresh Diet was overseen by its own President, CEO, Officers, and Board of Directors.[8] (Docket No. 114, Ex. D) (emphasis added).

Plaintiffs similarly plead no facts to support their conclusory allegations that Fresh Diet was controlled by the same "core" group of individuals prior to and after its acquisition by Innovative (Fifth Pleading ¶ 32), or that Innovative integrated Fresh Diet into its own operations. (Fifth Pleading ¶ 33) In fact, the public record belies these allegations (Docket No. 114, Ex. F), which confirms that management of Fresh Diet was different from management of Innovative. Without specific factual allegations to contradict the public record, the Court should not credit the conclusory (as opposed to factual) allegations of Plaintiffs. Thus, the Fifth Pleading is devoid of any factual allegation that could support the conclusion that Innovative was ever a successor of Fresh Diet. Plaintiffs' discussion (Pl. Mem. at 9-10) of the nine-factor test[9] is therefore irrelevant here, where there is no dispute that Fresh Diet continued its operations, and no factual allegation that it was succeeded by Innovative.

---

[8] Plaintiffs attempt to demonstrate that there is a connection between the management of Innovative and Fresh Diet by pointing out that the public filings indicate that Innovative's CEO, Sam Klepfish, was also a board member of Fresh Diet. (Pl. Mem. at 12) Such an inference is unwarranted without any factual allegations to support it. That a corporate officer of Innovative was but one of the directors of Fresh Diet does not support the allegations in paragraphs 94 and 99 of the Fifth Pleading. More is required to support a plausible inference that, contrary to Innovative's filings, which describe Fresh Diet as an independent subsidiary controlled by a separate board, it was, in fact, being controlled by Innovative. In short, Plaintiffs have pleaded no facts that support their conclusory allegations, which should be disregarded.

[9] Plaintiffs imply that if the "critical" notice test is passed, liability automatically passes to the new owner in its mere capacity as an owner. (Pl. Mem. at 9) The authority they cite, *Lewis v. Blackman Plumbing Supply LLC*, 51 F. Supp.3d 289 (S.D.N.Y. 2014) does not support this conclusion. *Lewis* was an ADA case, to which an FLSA claim was added too late for the purchasing party to have had knowledge of the potential claim before acquiring the company. 51 F. Supp.3d at 315. The court thus found that the first prong of the substantial continuity test was not met, and did not inquire as to the other factors. *Lewis* did not hold, as the Plaintiffs would have this Court believe, that an affirmative answer to the first prong of the test will always yield a finding of successor liability.

Thus, even if the Court were to apply the substantial continuity test, the allegations in the Fifth Pleading fall short of setting forth facts which support that Innovative – and not Fresh Diet itself – assumed responsibility for Fresh Diet's liabilities by sole reason of its status as a shareholder. Because Plaintiffs failed to plead facts sufficient to support its claim for successor liability, the Court should dismiss the FLSA claims against Innovative.

## III. PLAINTIFFS HAVE NOT PLEADED FACTS SUFFICIENT TO SUPPORT PIERCING THE CORPORATE VEIL

Plaintiffs choose to ignore plain Florida law that requires a plaintiff allege not only facts that support that Fresh Diet was an alter ego of Innovative,[10] but also that Innovative used Fresh Diet's corporate form to mislead its creditors (here, Plaintiffs) or perpetuate a fraud against them. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1119 (Fla. 1984); *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998); *Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, 2008 WL 2993958 at *7 (M.D. Fla. Aug. 1, 2008), *aff'd*, 605 F.3d 856 (11th Cir. 2010); *XL Vision, LLC v. Holloway*, 856 So. 2d 1063, 1066 (Fla. 5th DCA 2003).

Plaintiffs' reliance on *Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp.2d 3146 (S.D. Fla. 2000), for the proposition that they need only plead "improper conduct" and not fraud is misplaced. In *Meterlogic*, the court held that the corporate veil would not be pierced because the first prong – mere instrumentality – was not met. 126 F. Supp.2d at 1357. Thus, the court's statement about "improper conduct" was mere *dicta*, since the court did not analyze the second prong of the test. The *Meterlogic* court did not reach the question of what type of misconduct must be pleaded to pierce the corporate veil, and is of no help to Plaintiffs' deficient Fifth

---

[10] Plaintiffs don't even bother to engage in the traditional alter-ego analysis, since none of those indicia are present. Innovative and Fresh Diet had separate boards (with only one overlapping director), separate officers, separate management, separate employees, separate offices, facilities, and equipment, and separate bank accounts and accounting records.

8

Pleading. As set forth above, Florida law is clear, and requires the alleged improper conduct to relate directly to the abuse of the corporate form. Accordingly, because the Fifth Pleading contains no factual allegations of abuse of the corporate form, this Court can rule, as a matter of law, that the Fifth Pleading fails to state a claim against Innovative based on Fresh Diet's conduct by reason of piercing the corporate veil.

Finally, Plaintiffs' argument that Innovative should be held liable since it owned Fresh Diet when this action was commenced, and should not be able to use the corporate form to "hide assets" is specious. (Pl. Mem. at 13) Nothing alleged in the Fifth Pleading supports that Innovative sold Fresh Diet to hide assets, or otherwise evade liability. In fact, Plaintiffs concede that Innovative was financially supporting Fresh Diet (Fifth Pleading ¶¶ 97-98), and that Fresh Diet could not have continued as a going concern without Innovative's financial support. Far from plundering Fresh Diet's corporate assets, Innovative supported its operations for a year and a half, and Plaintiffs cite no authority for the proposition that Innovative became responsible for Fresh Diet's liabilities during the time it owned the company, much less that any such liability can remain with Innovative *after* it sold its interest.

## IV.   LEAVE TO AMEND SHOULD BE DENIED

Amazingly, Plaintiffs have now asked for a *sixth* bite at the apple, seeking leave to amend, presumably to add allegations which were put forth by the Individual Defendants in their state court lawsuit against former counsel relating to the purported settlement of *Hernandez I*. (Pl. Mem. at 5, 14) The request should not even be considered, let alone granted. First, the allegations made by the Individual Defendants are not new: they were made prior to the briefing of the motion to dismiss the *Third* Amended Complaint. Thus, to the extent that they are even relevant to the allegations against Innovative – and they are not – they should have been pleaded in the Fifth Pleading. The Court should not reward Plaintiffs' negligent failure to include

9

allegations they believe relevant by allowing them to waste more of the Court's and parties' time, not to mention legal fees in preparing the motion to dismiss the Third Amended Complaint and this motion, because of their failure to make the allegations they believe are necessary.

Second, Plaintiffs do not say how the allegations made in the Individual Defendants' malpractice suit – which relate solely to *Hernandez I*, solely to the Individual Defendants, and solely to Defendants' former counsel – have any bearing on this action. In what possible fashion can the allegations in a malpractice action arising from representation in another lawsuit have any bearing on the conduct of *Innovative* as a defendant in this action? At minimum, before the Court even considers granting leave to amend, Plaintiffs should be required to make such a showing, which they cannot.

Finally, as set forth at length in Innovative's moving memorandum, Plaintiffs seem to take leave to amend as an invitation to invent yet another set of "new factual allegations" to conform with the legal standard necessary to save their pleading from dismissal. The Court should not countenance Plaintiffs' obvious desire to use the requirement that the Court accept allegations of fact as true for the purposes of a Rule 12 motion as an invitation to make up whatever allegations are necessary to stave off dismissal of a pleading that obviously lacks any substantive merit.

Plaintiffs' request for leave to amend yet again – *for the sixth time* – demonstrates that, at least with respect to Innovative, Plaintiffs are fishing for a basis, any basis, to impute liability where established FLSA and corporate law dictates that none exists (and thereby cause Innovative to continue to incur costs and legal fees in connection with fighting this frivolous action). If leave is granted, Innovative would be compelled to make a *third* motion to dismiss, at considerable cost to itself, and at considerable expense of the Court's time and resources.

Enough is enough. Plaintiffs have been given more than ample opportunity to plead a plausible claim. That they have not been able to do so thus far, and that they can point to no new additional facts that could support such a claim, warrants a dismissal that is final, with prejudice, and without leave to amend.

## Conclusion

For the reasons stated herein and in Innovative's initial moving papers, Innovative respectfully requests that the Court dismiss the Fourth Amended Complaint in its entirety, or in the alternative, that the Court dismiss the Fourth Amended Complaint in its entirety as against Innovative; that such dismissal be with prejudice and without leave to amend; and that the Court grant Innovative such other and further relief as the Court deems just and proper, including its costs and reasonable attorneys' fees incurred in connection with defending this iteration of the Complaint.

Dated: New York, New York
April 7, 2017

Respectfully submitted,

FEDER KASZOVITZ LLP

By: _____

Howard I. Rhine (HR-1961)
David Sack (DS-6532)
845 Third Avenue
New York, New York 10022
Telephone: (212) 888-8200

Attorneys for Defendant
Innovative Food Holdings, Inc.