**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------×
FERNANDO HERNANDEZ, JUANY GUZMAN,
BRANDON ROSE, IRVING COLLADO, ANDRES
SALAS, BENGALY KONATE, MICHAEL J.
RODRIGUEZ, WILTON A. DARDAINE and JUAN
CORREA,

               *Plaintiffs,*

       *v.*

THE FRESH DIET INC.,                               **15 CV 1338**
LATE NIGHT EXPRESS COURIER SERVICES, INC.
(FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
INNOVATIVE FOOD HOLDINGS, INC. (FL)
FRESH DIET EXPRESS CORP. (FL),
NEW FRESH CO., LLC (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and SCHER ZALMAN DUCHMAN, Individually,

               *Defendants.*

---------------------------------------------------------------------×

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT INNOVATIVE FOOD HOLDINGS, INC.'S MOTION**
**TO DISMISS THE FOURTH AMENDED COMPLAINT**

---

Walker G. Harman, Jr.
Edgar M. Rivera
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, New York 10001
212.425.2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

STANDARD .................................................................................................................... 4

ARGUMENT ................................................................................................................... 5

POINT I
INNOVATIVE IS LIABLE FOR PLAINTIFFS' DAMAGES UNDER AN FLSA
SUCCESSOR LIABILITY THEORY ......................................................................... 6

    *A.   The Court must apply the substantial continuity test when assessing successor
liability.* ........................................................................................................................ 7

    *B.   Plaintiffs have pled sufficient facts to establish successor liability under the
substantial continuity test.* ........................................................................................ 8

POINT II
THE COURT SHOULD PIERCE THE CORPORATE VEIL ................................... 10

POINT III
THE FLSA'S BROAD REMEDIAL PURPOSE DEMANDS THAT THE COURT
PROHIBIT INNOVATIVE FROM RENDERING FRESH DIET JUDGMENT-PROOF
........................................................................................................................................ 12

POINT IV
IN THE ALTERNATIVE, THE COURT SHOULD ALLOW PLAINTIFFS TO FILE A
FIFTH AMENDED COMPLAINT ............................................................................... 14

CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Barrentine v. Arkansas-Best Freight Sys., Inc.*
    450 U.S. 728 (1981) ....................................................................................12, 13

*Battino v. Cornelia Fifth Ave., LLC*
    861 F. Supp. 2d 392 (S.D.N.Y. 2012) ...................................................6, 7, 11

*Bautista v. Beyond Thai Kitchen, Inc.*
    2015 U.S. Dist. LEXIS 124454 (S.D.N.Y. Sep. 17, 2015) ........................6, 7, 8

*Chao v. Gotham, Registry, Inc.*
    514 F.3d 280 (2d Cir. 2008) ......................................................................13

*Chime v. Peak Sec. Plus, Inc.*
    137 F. Supp. 3d 183 (E.D.N.Y. 2015) .........................................................4, 5

*Cuervo v. Airport Servs.*
    984 F. Supp. 2d 1333 (S.D. Fla. 2013) .......................................................8, 9

*Duling v. Gristede's Operating Corp.*
    265 F.R.D. 91 (S.D.N.Y. 2010) ..................................................................5

*EEOC v. Nichols Gas & Oil, Inc.*
    518 F. Supp. 2d 505 (W.D.N.Y. 2007) …………………………….........................10

*Fletcher v. Atex, Inc.*
    68 F.3d 1451 (2d Cir. 1995) .......................................................................11

*Flores v. Velocity Express, LLC*
    2015 U.S. Dist. LEXIS 50367 (N.D. Cal. Apr. 16, 2015) …………………….........6

*Glausier v. A+ Nursetemps, Inc.*
    2015 U.S. Dist. LEXIS 57635 (M.D. Fla. May 1, 2015) …………………………....7, 8

*Hernandez et al. v. The Fresh Diet Inc. et al.*
    No. 12 Civ. 04339 (ALC) (JLC) ................................................................1

*Irizarry v. Catsimatidis*
    722 F.3d 99 (2d Cir. 2013) .......................................................................10

*Jai Fu Chen v New 9th Ave Pearl on the Sushi Inc.*
    2015 U.S. Dist. LEXIS 84128 (S.D.N.Y. June 29, 2015) .................................4

*Ji Li v. Ichiro Sushi, Inc.*
    2016 U.S. Dist. LEXIS 41894 (S.D.N.Y. Mar. 29, 2016) ...................................................5

*KForce Gov't Solutions*
    2014 U.S. Dist. LEXIS 158626 (M.D. Fla. Nov. 10, 2014) ...........................................13

*Lewis v. Blackman Plumbing Supply L.L.C.*
    51 F. Supp. 3d 289 (S.D.N.Y. 2014) ...................................................................9

*Meterlogic, Inc. v. Copier Solutions, Inc.*
    126 F. Supp. 2d 1346 (S.D. Fla. 2000) ...............................................................11

*Murphy & King Prof'l Corp v. BlackJet, Inc.,*
    2016 U.S. Dist. LEXIS 69206 (S.D. Fla. May 26, 2016) ............................................12

*Romita v. Anchor Tank Lines, LLC,*
    2014 U.S. Dist. LEXIS 37621, (S.D.N.Y. Mar. 17, 2014) ...........................................8, 9

*Rowe Entmt, Inc. v. William Morris Agency,*
    2005 U.S. Dist. LEXIS 75 (S.D.N.Y. January 5, 2005) ) .................................................8

*Rutherford Food Corp. v. McComb*
    331 U.S. 722 (1947) .......................................................................................12, 13

*Steinbach v. Hubbard*
    51 F.3d 843 (9th Cir. 1995) ...........................................................................4

*Swierkiewicz v. Sorema N. A.*
    534 U.S. 506 (2002) .......................................................................................4

*Tara Prods. v Hollywood Gadgets, Inc.*
    2010 U.S. Dist. LEXIS 37889 (S.D. Fla., Apr. 16, 2010) ..............................................11

*Tho Dinh Tran v. Dinh Truong Tran*
    1998 U.S. Dist. LEXIS 414  (S.D.N.Y. Jan. 20, 1998) ..................................................14

*Tony & Susan Alamo Found. v. Secretary of Labor*
    471 U.S. 290 (1985) .......................................................................................13

*United States v. KForce Gov't Solutions, Inc.*
    2014 U.S. Dist. LEXIS 158626 (M.D. Fla., Nov. 10, 2014) ..........................................11

*Vaher v. Town of Orangetown, N.Y.*
    916 F. Supp. 2d 404 (S.D.N.Y. 2013) ...................................................................5

**Rules**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................4

Fed. R. Civ. P. 12(b)(6) ...............................................................................................5

Plaintiffs Fernando Hernandez, Juany Guzman, Brandon Rose, Irving Collado, Andres Salas, Bengaly Konate, Michael J. Rodriguez, Wilton A. Dardaine, and Juan Correa respectfully submit this Memorandum of Law in Opposition to Defendant Innovative Food Holdings, Inc.'s Motion to Dismiss the Fourth Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT

Defendant Innovative Food Holdings, Inc. ("Innovative" or "Defendant") has moved this Court to dismiss Plaintiffs' Fourth Amended Complaint (the "FAC") as against Innovative.

To summarize the nature of Plaintiffs' claims: Plaintiffs in this action were subjected to a policy by which they were classified as independent contractors and not employees, and paid by the number of miles driven, rather than hours worked.  As a result of this policy, Plaintiff were not paid at the overtime premium rate for hours worked in excess of 40 in any given week of their employments, and Plaintiffs received substantially less than the compensation that they are entitled to under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

Innovative first argues that Plaintiffs' pleadings in the FAC are insufficient to establish a claim for unpaid overtime under the FLSA and NYLL.  Not only is this incorrect—as courts are not required to dismiss a plaintiff's overtime claims if that plaintiff is not able to recall the precise number of overtime hours they worked each week five years ago—but Innovative attempts to make this argument while ignoring the elephant in the room: Plaintiffs had opted in to an earlier action against Defendants (excluding Innovative) brought by their coworkers, *Hernandez et al. v. The Fresh Diet Inc. et al.*, No. 12 Civ. 04339 (ALC) (JLC) ("*Hernandez I*"), in which Defendants unsuccessfully moved for summary judgment on the issue of whether

1

Plaintiffs were independent contractors.  Though Plaintiffs are no longer parties to that lawsuit,[1] to suggest that it is *implausible* that Plaintiffs were entitled to overtime strains credulity.

Next, Innovative distorts the salient facts and law in order to convince the Court that Innovative should not be a party to this lawsuit.  On the contrary, Innovative is deeply involved in this litigation.  It is liable for the actions of Defendant The Fresh Diet, Inc. ("Fresh Diet"), and other Defendants, and, as such, is a proper party to this action.  Innovative admits that at the time this action was filed, it wholly owned Fresh Diet, had "loaned" Fresh Diet millions of dollars, and was funding Fresh Diet's operations.  The Court should disregard Innovative's attempts to introduce outside documents to support its motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), but even if the Court does not, Innovative's public filings do not show that Innovative—which, again, wholly owned and funded Fresh Diet—did not control Fresh Diet's operations or bear responsibility for Fresh Diet's liabilities.  In fact, those documents show that Innovative's CEO was a board member of Fresh Diet.

In the alternative, if the Court grants the Motion, the Court should allow Plaintiffs to amend the complaint to include, *inter alia*, information concerning the relationship between the Individual Defendants and the corporate defendants, the circumstances surrounding the settlement of *Hernandez I*, and Fresh Diet's sale to and reacquisition from Innovative..

In short, Innovative assumed Fresh Diet's legal liability when it acquired Fresh Diet.  It then made that liability its own when it became so deeply involved in Fresh Diet's operations as to render them functionally one and the same, and then disposed of Fresh Diet in such a way as to make prosecution of this case against Fresh Diet functionally impossible.  Accordingly, the Court should deny Innovative's motion and keep Innovative in this case.

---

[1] Plaintiffs Fernando Hernandez and Juany Guzman, who bring retaliation claims in the instant lawsuit, remain plaintiffs in *Hernandez I*.

## STATEMENT OF FACTS

For a more complete statement of facts in this case, Plaintiffs respectfully direct the Court to the FAC, included in Defendants' moving papers as Exhibit A.  Below is a summary of the facts relevant to this Motion.

Plaintiffs were employed by Defendants (excluding Innovative) at various times within the relevant statutory period up through 2013 as delivery drivers.  FAC ¶¶ 34–43.  Plaintiffs bring this action alleging that they were (1) improperly classified as independent contractors and thereby denied overtime under the FLSA and NYLL, and (2) retaliated against for participating in a separate action against Defendant Fresh Diet (*Hernandez I*).  FAC ¶¶ 1–2.  Many of the Plaintiffs in this action opted in to *Hernandez I*, then commenced the instant action when that case was decertified.

Innovative acquired Fresh Diet on August 15, 2014, subsequent to the commencement of *Hernandez I.*  FAC ¶ 93.  As a result of that merger, Innovative became the sole shareholder of Fresh Diet.  FAC ¶¶ 93–94.  Fresh Diet's operations were controlled and directed by Innovative. FAC ¶¶ 96–101.  This control included making decisions about Fresh Diet personnel, the scope of the Fresh Diet business, and litigation strategy in *Hernandez I.*  FAC ¶ 99.  Plaintiffs recently learned, through papers filed by Innovative in *Hernandez I*, that Fresh Diet was insolvent throughout Innovative's period of control, and was sustained only through funds received from Innovative.[2]

Plaintiffs filed the initial complaint in this action on February 24, 2015; filed the First Amended Complaint on April 10, 2015; filed the Second Amended Complaint on September 25, 2015; filed the Third Amended Complaint on May 31, 2016; and filed the Fourth Amended

---

[2] Plaintiffs are aware that the Court cannot consider matters outside of the pleadings; to the extent that Plaintiffs provide information outside of the pleadings in this Opposition, it serves only to illustrate the extent to which Plaintiffs recently obtained information that potentially necessitates the filing of an amended complaint.

Complaint on October 10, 2016.  *See* Docket Nos. 1, 5, 31, 82.   Innovative was named in the initial complaint and in each amended complaint.

In February 2016, Innovative arranged for and executed the sale of a controlling interest in Fresh Diet to New Fresh; New Fresh is owned by Defendant Duchman, who had sold his stake in Fresh Diet to Innovative less than two years prior.  FAC ¶¶ 102–104.  Innovative orchestrated this transaction in an attempt to avoid liability in *Hernandez I* and to shield any remaining assets from the settlement of *Hernandez I.*  FAC ¶ 105.

As Plaintiffs previously made clear, Plaintiffs do not suggest that Fresh Diet took illegal actions towards them while owned by Innovative; Innovative's ownership, as they note, did not commence until after the last Plaintiff in this action had ceased working for Fresh Diet. Plaintiffs *do* assert, however, that Innovative has assumed liability for Fresh Diet's prior acts due to the extent of Innovative's control over Fresh Diet, and has made bad faith efforts to divest itself of Fresh Diet and its liabilities.  As Innovative was responsible for Fresh Diet's liabilities at the time this action was filed, Innovative is a proper Defendant and is a necessary party to this action.

## **STANDARD**

A complaint is sufficient, and should not be dismissed, if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint satisfies the requirements of Rule 8(a) if it gives the respondent "fair notice of the basis for petitioner's claims."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).  When deciding a motion to dismiss, "[t]he court must […] accept the complaint's allegations as true, and draw all reasonable inferences in the plaintiff's favor." *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 190 (E.D.N.Y. 2015) (quoting *Sykes v.*

4

*James*, 13 F.3d 515, 519 (2d Cir. 1993)).  This Opposition assumes that Plaintiffs have stated a

claim against Fresh Diet and addresses in detail the adequacy of Plaintiffs' claims against

Innovative.  Thus, taking Plaintiffs' allegations as true, the Court must find that Plaintiffs have

alleged grounds for Innovative to be liable for Fresh Diet's prior actions.[3]

Innovative introduces numerous documents in support of its motion to dismiss the

complaint, including filings with the SEC and Florida Secretary of State.  "[I]n ruling on a

motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the

four corners of the complaint and look only to the allegations contained therein."  *Vaher v. Town

of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 423 (S.D.N.Y. 2013).  Although courts occasionally

consider documents outside the four corners of the complaint in resolving a 12(b)(6) motion to

dismiss, those documents must be attached to the complaint, incorporated by reference or

integral to the complaint, or otherwise relied on by the plaintiff.  *Ji Li v. Ichiro Sushi, Inc.*, 2016

U.S. Dist. LEXIS 41894, at *16 (S.D.N.Y. Mar. 29, 2016).  Though the FAC refers to the merger

and subsequent sale of Fresh Diet to Innovative, Defendants' filings are outside the appropriate

scope of a motion to dismiss under Rule 12(b)(6) and should not be considered by the Court.

## ARGUMENT

Innovative argues that the Complaint should be dismissed because Plaintiffs have failed

to plead facts establishing continuing liability or supporting the piercing of the corporate veil.

While it is true that the acts giving rise to liability under the FLSA and NYLL took place prior to

Innovative's involvement, Innovative is still subject to Fresh Diet's liability through the

doctrines of piercing the corporate veil and successor liability in the context of the FLSA.

---

[3] In the alternative, Plaintiffs seek leave to file a Fifth Amended Complaint, pursuant to Rule 15.  Leave to amend a pleading should be freely granted when justice so requires.  *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96 (S.D.N.Y. 2010).  Allowing Plaintiffs to amend would not prejudice Defendants.

**POINT I.**

**INNOVATIVE IS LIABLE FOR PLAINTIFFS' DAMAGES UNDER AN FLSA SUCCESSOR LIABILITY THEORY**

As a matter of law, FLSA liability passes from the initial wrongdoer to a purchasing entity through successor liability. *See Bautista v. Beyond Thai Kitchen, Inc.,* 2015 U.S. Dist. LEXIS 124454, at *6 (S.D.N.Y. Sep. 17, 2015); *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012).  In sum, one entity may not escape liability simply by transforming into another and continuing as functionally the same business. *Battino*, 861 F. Supp. 2d at 401 (S.D.N.Y. 2012).  Thus, at a bare minimum, the Fresh Diet entity controlled by Innovative, through successor liability, bears the liabilities of the original Fresh Diet.

Circuit Courts have recognized that successor liability in the FLSA context does not apply only where the wrongdoer entity sells its assets and ceases to exist, but also in the parent-subsidiary context.  "'[T]he form of transfer from one business to another [is] of no consequence in the successorship inquiry.'  That is because the relevant question in determining whether to extend successor liability is whether 'the policies underlying the FLSA' are 'better served,' and 'the relevant policy analysis [is] unaffected by the type of transfer.'" *Flores v. Velocity Express, LLC*, No. 12 Civ. 05790 (JST), 2015 U.S. Dist. LEXIS 50367, at *11 (N.D. Cal. Apr. 16, 2015) (citing *Steinbach v. Hubbard*, 51 F.3d 843, 847 (9th Cir. 1995)).  Courts in this Circuit frequently cite to *Steinbach* for the proposition that courts should use the more lenient "substantial continuity" test (described below); this Court should refer to *Steinbach* for the above proposition, as well. *Battino*, 861 F. Supp. 2d at 402; *Bautista,* 2015 U.S. Dist. LEXIS 124454 at *7.  Using this construction of successor liability, Innovative assumes Fresh Diet's FLSA liabilities to its former employees.

6

### A. The Court must apply the substantial continuity test when assessing successor liability.

The Motion refers to Plaintiffs' prior opposition to Innovative's motion to dismiss the Third Amended Complaint for the proposition that "Plaintiffs appear to invoke the 'mere continuation' theory of successor liability." In doing so, Defendants completely ignore Plaintiffs' argument that Defendants are liable as successors under the substantial continuity test.

Although the Second Circuit has not formally adopted the federal "substantial continuity" test, multiple decisions in the Southern District of New York have held that the substantial continuity test is appropriate for determining successor liability in the FLSA context. *Jai Fu Chen v New 9th Ave Pearl on the Sushi Inc.*, 2015 U.S. Dist. LEXIS 84128, at *12-13 (S.D.N.Y. June 29, 2015); *Battino*, 861 F. Supp. 2d at 402; *Bautista*, 2015 U.S. Dist. LEXIS 124454, at *10.[4] As such, when assessing the adequacy of Plaintiffs' Complaint, the Court should refer to the factors of the substantial continuity test to determine if successor liability has been adequately pled.

The test for successor liability proposed by Innovative—the New York or traditional common law test—is not appropriate here. First, as described above, courts in this Circuit routinely apply the broader federal substantial continuity test to cases involving wage-and-hour claims. Moreover, as Defendants note, courts look to the choice of law rules of the forum state when deciding the applicable law. Under New York law, the general rule is that the law of the state of incorporation determines questions of successor liability and corporate veil piercing. Def.'s Mem. Law at 17, n. 14. Innovative, a Florida company, is therefore bound by the decisions in the Eleventh Circuit, which uses the substantial continuity test. *Cuervo v. Airport Servs.*, 984 F. Supp. 2d 1333, 1337 (S.D. Fla. 2013). Defendant's reliance on *Rowe Entmt, Inc.*

---

[4] Federal courts in the Eleventh Circuit have also used federal standards, rather than state or common law standards, when analyzing successor liability under the FLSA. *Glausier v. A+ Nursetemps, Inc.*, 2015 U.S. Dist. LEXIS 57635, at *17 (M.D. Fla. May 1, 2015).

*v. William Morris Agency* for the proposition that substantial continuity only applies in cases of

asset transfers, not stock transfers, is mistaken.  2005 U.S. Dist. LEXIS 75 (S.D.N.Y. January 5,

2005).  Simply stated, the Eleventh Circuit has already rejected Innovative's argument:

> [I]n any event, it is unnecessary in this case to resolve any issues concerning the transfer of assets or any other uncertainties in the general corporate law of successorship liability because *none of that law applies here.* This is an FLSA case […] The substantive rule of decision, therefore, is supplied by Federal law, and the Supreme Court and the courts of appeal have clearly fashioned a separate and more flexible body of law governing successorship liability under remedial Federal labor laws including the FLSA.

*Glausier*, 2015 U.S. Dist. LEXIS 57635, at *15-16 (citing *In re National Airlines, Inc.*, 700 F.2d

695, 698 (11th Cir. 1983)) (emphasis added).  Thus, if the Court chooses to apply the rule of the

state of incorporation, it may not use the successor liability formulation proposed by Defendants,

which is not applied by Florida federal courts.

**B.** *Plaintiffs have pled sufficient facts to establish successor liability under the substantial continuity test.*

When applying the substantial continuity test, courts consider the following elements:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Bautista*, 2015 U.S. Dist. LEXIS 124454 at *10.  Courts in this Circuit have also used a

simplified two-factor test: (1) whether the successor company had notice of its predecessor's

obligations, and (2) whether sufficient continuity of identity exists between the two businesses.

*Romita v. Anchor Tank Lines, LLC*, 2014 U.S. Dist. LEXIS 37621, at *14 (S.D.N.Y. Mar. 17,

2014).  In the Eleventh Circuit, the elements of the substantial continuity test—often referred to

as the "Supreme Court's Successor Liability Test"—are substantially the same: (1) "whether the successor employer had prior notice of the claim against the predecessor," (2) "whether the predecessor is able to provide the relief requested," and (3) "whether there has been sufficient continuity in the business operations of the predecessor and the successor to justify the imposition of liability." *Cuervo*, 984 F. Supp. 2d 1339.  Under any version of the substantial continuity test, Innovative should be held responsible for Fresh Diet's liabilities.

In all tests, the first element is crucial.  Among all of the factors enumerated, "courts have recognized that at least the first factor ('notice' of the claim prior to acquisition) is 'critical' to any finding of successor liability."  *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 314 (S.D.N.Y. 2014).  In this case, Plaintiffs have pled facts that clearly establish Innovative's notice of liability.  *Hernandez I* was filed against Fresh Diet, Defendant Duchman, and Defendant Schloss, among others, on June 1, 2012, and was publicly available on that date— well before Innovative's involvement.  FAC ¶ 52.  The allegations in *Hernandez I* are nearly identical to those in the instant case, as they involve claims by drivers for unpaid overtime due to misclassification as independent contractors.  Indeed, the Plaintiffs in this lawsuit had opted in to *Hernandez I.*  FAC ¶ 95.  Further, Innovative bought Fresh Diet from Defendant Duchman, a named defendant in *Hernandez I.*  These facts clearly establish that Innovative had notice of Fresh Diet's liability.

All of the remaining factors—Innovative's ability to pay; continuity of business operations; use of the same plant, supervisory personnel, jobs, and machinery; and production for the same client—fall in Plaintiffs' favor.  Innovative, a large corporation with millions of dollars in gross revenue, has the ability to pay a judgment on the claims, unlike the now-bankrupt Fresh Diet.  Further, Defendants admit that Innovative was keeping Fresh Diet afloat throughout its

ownership.  Fresh Diet, in all of its manifestations, used substantially the same employees, equipment, methods, and facilities, performed the same operations, and provided the same services and product.  FAC ¶¶ 112–115.  In *EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 513 (W.D.N.Y. 2007), the court found that a successor was an appropriate defendant where that successor retained the same employees, engaged in the same business, worked out of the same location, and had purchased the property of the predecessor.  Here, Plaintiffs' allegations establish substantial continuity; thus, Plaintiffs have adequately pled successor liability.

### POINT II.
### THE COURT SHOULD PIERCE THE CORPORATE VEIL

As a matter of law, a parent corporation is subject to the liabilities of a subsidiary if the two are so intertwined that the corporate veil can be pierced.  The FAC contains allegations that suffice to establish grounds for piercing the corporate veil and, therefore, liability for Innovative on Fresh Diet's actions.

As noted above, courts do not use the traditional employment analysis when determining if an individual owner is liable under the FLSA as an employer.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 116 (2d Cir. 2013) ("[…] the purpose of the FLSA is not to punish an employer but to remunerate aggrieved employees.").  This reasoning applies as well to *all* analyses where which entities are liable under the FLSA is at issue, including the piercing of the corporate veil.  As a result, the Court need not necessarily engage in the traditional veil-piercing analysis.[5]  However, as shown below, even under the applicable veil-piercing standards, liability attaches to Innovative.

---

[5] Defendants' performative shock at Plaintiffs' suggestion that a more lenient standard be applied to plaintiffs in cases involving federal employment law is misplaced; the public policy in favor of effectuating the remedial nature of these statutes, including the FLSA, is *precisely* the reason why courts apply the substantial continuity standard for successor liability.  *See Battino,* 861 F. Supp. 2d at 403–405.

Under New York choice of law principles, the law of the state of incorporation is used when determining whether to pierce the corporate veil. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456–1457 (2d Cir. 1995). Here, Innovative is incorporated in Florida (FAC ¶ 23), therefore Florida law applies to this question.

Under Florida law, "[a]t the motion to dismiss stage, courts are reluctant to determine the fact intensive question of whether a corporate entity is merely an alter ego to protect an individual defendant from liability." *Tara Prods. v Hollywood Gadgets, Inc.*, 2010 U.S. Dist. LEXIS 37889, at *35 (S.D. Fla., Apr. 16, 2010). Further, in Florida, "a court will pierce the corporate veil when a corporation does not have funds to satisfy a judgment, so that corporations may not hide assets by simply passing them to other individuals or entities." *United States v. KForce Gov't Solutions, Inc.*, 2014 U.S. Dist. LEXIS 158626, at *27 (M.D. Fla., Nov. 10, 2014). Plaintiffs have alleged that Innovative improperly manipulated Fresh Diet to avoid the obligations of the settlement agreement negotiated by Innovative's attorneys in *Hernandez I* (FAC ¶ 90); this type of conduct not only permits the piercing of the corporate veil in that case, but also amounts to improper conduct sufficient to support Plaintiffs' argument in favor of piercing the corporate veil in this case.

Under Florida law, in order to pierce the corporate veil, Plaintiffs must "(1) that the subsidiary is a mere instrumentality of the parent and (2) improper conduct." *Meterlogic, Inc. v. Copier Solutions, Inc*., 126 F. Supp. 2d 1346, 1357 (S.D. Fla. 2000). Plaintiffs have adequately pled the first element by alleging that Innovative "controlled all aspects of The Fresh Diet, including, but not limited to, its operations, the hiring and firing of employees, the payment of wages, and legal issues" (FAC ¶ 99), and by alleging that Fresh Diet was undercapitalized to the extent that it was unable to fund the settlement agreement in *Hernandez I* (FAC ¶ 111).

11

Further, the documents submitted by Innovative in support of its Motion illustrate the significant connection between Innovative and Fresh Diet.  Innovative submits a 2015 quarterly filing with the SEC, which identifies Sam Klepfish as Innovative's Chief Executive Officer. Def.'s Ex. E.  Innovative also submits a 2015 Fresh Diet filing with the Florida Secretary of State that identifies Sam Klepfish as a member of Fresh Diet's Board of Directors.  Def.'s Ex. F.  This goes to show that the same individuals controlled both organizations, which supports piercing the corporate veil.

As described above, Plaintiffs have adequately pled the second element by alleging that Innovative used various corporate transactions with Fresh Diet to avoid judgment.  FAC ¶ 105. Plaintiffs allege that Innovative's attorneys represented Fresh Diet in *Hernandez I*.  FAC ¶ 100. Defendant argues that Plaintiffs cannot plead the facts necessary to establish that Innovative perpetrated a fraud; however, under Florida law, pleading fraud is not necessary to pierce the corporate veil—Plaintiffs must merely plead "improper conduct."  *Murphy & King Prof'l Corp v. BlackJet, Inc.*, 2016 U.S. Dist. LEXIS 69206, at *6 (S.D. Fla. May 26, 2016).  Innovative rendered Fresh Diet judgment-proof against the plaintiffs in *Hernandez I* and the Plaintiffs here—which is certainly improper conduct.

Accordingly, with all plausible inferences afforded to Plaintiffs, Plaintiffs have, at the very least, adequately pled a scenario that warrants the piercing of the corporate veil.

## POINT III.
## THE FLSA'S BROAD REMEDIAL PURPOSE DEMANDS THAT THE COURT PROHIBIT INNOVATIVE FROM RENDERING FRESH DIET JUDGMENT-PROOF

The Supreme Court has repeatedly recognized that Congress intended the FLSA to have broad reach in order to achieve its underlying remedial purpose of eliminating substandard working conditions for employees in covered industries.  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727

(1947).  The Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches consistent with congressional direction.'" *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 296 (1985) (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959)); *see Chao v. Gotham, Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (noting that "the Supreme Court consistently has interpreted the Act liberally and afforded its protections exceptionally broad coverage") (citations omitted).

As shown above, Innovative must be held liable for Fresh Diet's actions; Innovative assumed Fresh Diet's liability through its acquisition and control of Fresh Diet.  Plaintiff commenced this action while Innovative owned Fresh Diet.  Since that time, and likely in response to the ongoing litigation, Innovative attempted to shield itself from liability by dumping Fresh Diet back onto its original owner.  Shortly thereafter, New Fresh declared bankruptcy. Chabeli Herrera, '*I Feel Like I Was Ripped Off!' The Fresh Diet Closes Without Alerting Employees, Clients*; Miami Herald (July 25, 2016) http://www.miamiherald.com/living/food-drink/article91787977.html#storylink=cpy.  As mentioned above, one reason that courts entertain liability for parent corporations is so they may not hide assets.  *KForce Gov't Solutions*, 2014 U.S. Dist. LEXIS 158626, at *27.  Innovative was a proper party at the outset of this litigation and remains a proper party today.  *Id.*  Innovative's attempts to stymie Plaintiffs by any means necessary run contrary to the intent of the FLSA: to remunerate aggrieved employees. Accordingly, the Court should deny Innovative's Motion.

13

## POINT IV.
## IN THE ALTERNATIVE, THE COURT SHOULD ALLOW PLAINTIFFS TO FILE A FIFTH AMENDED COMPLAINT

Should the Court question the adequacy of the FAC, then, as respectfully requested above, it should deny Innovative's Motion and permit Plaintiffs to amend their complaint. Subsequent to the filing of the FAC, the Individual Defendants in this action filed a lawsuit against their and Fresh Diet's former attorneys concerning the settlement of *Hernandez I*. This lawsuit will produce information relevant to the relationship between the Individual Defendants and the corporate defendants, the circumstances surrounding the settlement of *Hernandez I*, and Fresh Diet's sale to and reacquisition from Innovative. Further, Innovative's motion relies on documents that Plaintiffs' counsel had not received prior to the drafting of the FAC. Motions to amend under Rule 15(a) are to be freely granted and often are when relevant new information comes to light. *Tho Dinh Tran v. Dinh Truong Tran*, 1998 U.S. Dist. LEXIS 414, at *7, *10 (S.D.N.Y. Jan. 20, 1998).

**<u>CONCLUSION</u>**

In sum, Plaintiffs have adequately pled claims against Innovative, due to Innovative's

assumption of liability.  As such, the Court should deny Innovative's Motion to Dismiss the

Fourth Amended Complaint.  If the Court has any doubt as to the adequacy of Plaintiffs' claims,

it should allow Plaintiffs to file a Fifth Amended Complaint.

Dated: New York, New York
         March 31, 2017

         Respectfully submitted,

        By: /s Walker G. Harman, Jr.
          Walker G. Harman, Jr. [WH-8044]
          Edgar M. Rivera [ER-1378]
          THE HARMAN FIRM, LLP
          220 Fifth Avenue, Suite 900
          New York, New York, 10001
          T: 212.425.2600
          wharman@theharmanfirm.com
          erivera@theharmanfirm.com

          *Attorneys for Plaintiffs*